## SCRUGGS *v.* SCOTTISH MORTGAGE CO.

Decided June 13, 1891.

1. *Usury—Sub-agent's commission.*

A loan of money at the highest lawful rate of interest is not rendered usurious by reason of the exaction of a commission by a sub-agent employed by the lender's agent without the lender's authority, express or implied.

2. *Corrupt intent necessary in usury.*

To constitute usury there must be an agreement to pay for the use of money more than lawful interest; accordingly a note bearing interest at the highest legal rate for the entire year 1884 will not be invalidated by the fact that the money was not loaned until June, if it was the agreement of the parties that, when the loan was closed, the note should be reduced by a credit which would bring it within the limits of lawful interest.

3. *Sub-agent's commission—Case stated.*

A loan company agreed to make a loan at 10 per cent.; notes and a mortgage were to be given to it for the principal and 8 per cent. interest, and other notes and a mortgage for the other 2 per cent. to be given to its agent S; without the company's authority S appointed a sub-agent who, while assuming to act for the lender, exacted for himself a commission for his services. In a suit to foreclose both mortgages, *held,* that there was but one loan made, and neither mortgage was usurious, since the commission was not paid to an agent of the lender ; that the amount of the commission paid, being an unlawful exaction and without consideration, should be credited on the debt due S.

4. *Foreign corporation—Doing business in the State.*

A foreign corporation, in lending money on land in this State, is not doing business in the State, within the meaning of section 11 of article 12 of the constitution of 1874, if the agreement for the loan was made in another State, and the notes and securities delivered and the money paid there.

APPEAL from *Lee* Circuit Court in chancery.

MATTHEW T. SANDERS, Judge.

*James P. Brown* for appellants.

1. The proof shows that Granger was the general agent of Smith & Co. in procuring loans, and that such general agency affects the mortgage company because Smith & Co. are confessedly the general agents of the mortgage com-

pany. 33 Ark., 251; 25 Am. Rep., 487; 29 *id.*, 69; 32 Fed. Rep., 113; 23 *id.*, 636; 1 N. W. Rep., 197; 9 *id.*, 650; 10 *id.*, 916; 15 *id.*, 214; 16 *id.*, 841; 29 *id.*, 154; 21 *id.*, 698; 18 *id.*, 76; Tyler on Usury, 274–363; 51 Ark., 534; *ib.*, 546.

2. The mortgages are void on their face by reason of the usurious interest agreed to be paid on the first interest note. If they were void for usury, a subsequent indorsement does not validate the securities. 35 Ark., 217; Byles on Bills (7th ed.), note 1, p. 314.

3. The mortgage company was a foreign corporation, and had not complied with our laws. Art. 12, sec. 11, Const. 1874. Hence it was entitled to no affirmative relief. 8 Wall., 168; 13 Pet., 519; 10 Wall., 410; 104 U. S., 11; 113 U. S., 727; 7 So. Rep., 200; *ib.*, 201. The mortgage was void as the company had not complied with our laws. 4 Col., 369; 20 Ind., 520; 55 Ill., 85; 10 Allen, 232; 1 Allen, 441; 80 Penn. St., 15; 3 Sawy., 218. The act of 1887, p. 234, could not validate contracts prohibited by the constitution.

*John M. Judah* and *Eben W. Kimball* for appellees.

1. The evidence fails to show that Granger was the agent of the mortgage company or of Smith & Co. He was an independent broker and acted as the agent of the borrower, and no commissions or fees charged by him could make the loan usurious. 66 Miss., 365; 7 S. E. Rep. 265.

2. The mortgages were not usurious. There was no agreement for more than 10 per cent. interest; the notes were not delivered until June 17, and they were properly credited so as to leave them representing interest only from that day.

3. The mortgages were not void, under art. 12, sec. 11, because:

*a.* The transaction was a Mississippi transaction—the business was not done in Arkansas. 43 Ark., 353; 46 *id*, 50; 7 Biss., 315, 372; 41 Fed. Rep., 653.

*b.* The section does not make the contracts void, as does art. 19, sec. 13; 132 U. S., 282; 98 U. S., 621–627; 35 La. An., 1184; 83 Ala., 315.

*c.* The act of 1887 (Acts 1887, p. 234), cured the defect, and it is constitutional. 44 Ark., 365; 27 Ark., 26; 93 Ill., 483; 108 U. S., 488; 63 Miss., 641.

*d.* *One* transaction does not fall within the prohibition. 113 U. S., 727.

HEMINGWAY, J. This is a suit brought by the appellant Scruggs to cancel his certain notes and mortgages, and to enjoin a sale of his land about to be made under the powers in said mortgages; one of the mortgages was executed by him to the Scottish-American Mortgage Company to secure a loan from it, and the other to Francis Smith & Co. to secure an indebtedness to them. The claim for relief was rested upon a charge of usury in the debts secured. The mortgagees answered separately, denying the charge of usury, and by cross-complaints sought the foreclosure of their several mortgages. At the final hearing, the original bill was dismissed, and a decree of foreclosure rendered upon the cross-bills.

The mortgage company was organized under the laws of Great Britain, for the purpose of lending money in the United States upon the security of real estate, having its principal office in Edinburg. In 1884 Francis Smith & Co., a firm of brokers in Vicksburg, were its agents to lend money on land in this State. They were not authorized to appoint sub-agents, and were instructed to lend money at the rate of 10 per cent. The plan upon which they did business was to take a mortgage to their principal for the amount of the loan and interest at 8 per cent., evidenced by several notes payable annually on the first day of January of each year, during the term of the loan; and to take another mortgage to themselves for 2 per cent. per annum on the loan, it being evidenced by several notes payable as the interest notes in the former mortgage. The interest notes

first to mature were written for the amount of a full year's
interest, with the purpose of crediting upon them, before
their acceptance, the interest accrued up to the date of ac-
ceptance. Such was the course pursued in this case. The
mortgage to Smith & Co. was designed by the lender as a
means of compensating its agent out of the interest con-
tracted for. The origin of this particular transaction was as
follows: Scruggs applied to Merwin & Daggett, brokers of
Marianna, for a loan of money; they had previously ar-
ranged with Granger, a broker in Memphis, to receive ap-
plications for loans, and present the same to Francis Smith
& Co. An application for a loan was prepared by them
and signed and sworn to by Scruggs, in substantially the
same form and upon the same general plan as the one de-
scribed in *Banks* v. *Flint, ante,* p. 40. Merwin & Daggett
presented the application to Granger at Memphis, and he
forwarded it to Smith & Co. at Vicksburg, with his state-
ment that he had examined the land and "recommended"
(but did not solicit) that a loan of $800 be made upon terms
indicated by him. They indorsed their approval upon the
application, and thereupon Granger prepared the notes and
mortgages and transmitted them to Merwin & Daggett.
They were executed in due form, and returned to Granger
with a power of attorney from Scruggs, authorizing Granger
to receive and receipt for the loan. The power solemnly re-
cites that Granger is the agent of the borrower and not of
the lender, and is verified by affidavit; it contains no express
reference to the capacity in which Granger acted in recom-
mending to Smith & Co. the action they should take.
Granger sent the securities and power of attorney to Smith
& Co. at Vicksburg, and they returned him the amount of
the loan. He retained $60 for his commissions and other
sums for matters not explained, and forwarded the balance
to Merwin & Daggett. The mortgage provided that it
should be governed by the laws of Arkansas. The mort-
gage company made no loan on land in Arkansas until 1884,
and made few, if any, prior to the one under consideration.

It does not appear that Granger had previously participated in loans made by it.   Francis Smith & Co. were engaged in a general brokerage business in Vicksburg, and loaned money for different persons and companies.   Up to the time of taking the proof they had made nineteen loans in Lee county in which Granger assisted, four for the mortgage company and fifteen for other parties.   The proof is that when Granger made his arrangement with Merwin & Daggett, he represented himself as acting for Smith & Co., that he employed a land examiner who reported directly to Smith & Co., and that a member of the latter firm several times asserted that he was their agent.   The application for a loan was addressed to no one, but recited a desire to borrow money, and empowered Granger, as the applicant's agent, to negotiate for it.   That he conducted any negotiations does not appear, except as it may be inferred from his recommendation to the lender's agent.   That he was mistaken as to the party whom he represented, and that he was in fact the agent of Smith & Co., may be accepted as a fact in the case.   That he retained from the money lent $60 as his commission, is conceded.   If this act can be charged to the lender, it is plain that the transaction was usurious, and that the notes and mortgages are void.   The question is, Was the lender chargeable with it?

**1. Sub-agents' commission.**   The evidence is direct and unshaken that the company did not authorize the employment of sub-agents, and that it had no knowledge of such employment.   The agency was not of such a character as that its execution demanded the service of sub-agents, for it appears from the proof that it has been more recently executed without any; the agent therefore had no implied authority to constitute sub-agents. Mechem on Agency, secs. 194–7.   Upon the proof we can only hold that he was not the agent of the company, and that his charge of a commission was his individual act, and not the act of the company.   What he charged was therefore not a part of the lender's charge, nor to be computed in calculating the amount paid for the use of money.   *Call*

v. *Palmer*, 116 U. S., 98; *Baldwin* v. *Doying*, 114 N. Y., 452; *Brigham* v. *Myers*, 51 Ia., 397; Mechem on Agency, sec. 745; Story on Agency, sec. 170.

It is contended that usury is shown upon the face of the notes and mortgages in this, that the borrower gave his note for interest at 10 per cent. for the entire year 1884, when he did not receive the money until June. To constitute usury, there must be an agreement to pay for the use of money more than 10 per cent. interest, and usury cannot be imputed to a lawful contract where, by inadvertence or mistake, it was drafted to call for excessive interest.

The borrower in this case, applied for a loan at 10 per cent., and his application was accepted upon those terms. There was no other understanding or agreement between the parties, and, as regards the matter now considered, neither party ever intended anything except that 10 per cent. interest and no more should be paid. The interest notes first to mature were drawn for the amount of a full year's interest, but this was in accordance with a plan followed by Francis Smith & Co., which contemplated a reduction of such notes, before closing the transaction, by a credit upon them which would bring them within the limits of lawful interest. Although the notes had been signed by the borrower, their execution had not been completed by delivery and acceptance, when the interest earned up to the date of delivery was credited upon them, thus making them stand for the interest for the remainder of the year. The plaintiffs cannot complain for usury, because there was no agreement for the payment of unlawful interest, and he cannot complain that the notes were changed by the credit, because he ratified it by paying the notes that bore the indorsement.

But it is further contended that, even if the company can assert its claim, Smith & Co. cannot, because they knew of the payment of commissions to Granger, and as to them the contract was usurious and the securities void. There was but one loan made, and it at 10 per cent. interest. Notes

and a mortgage were given to the company for the principal and 8-per cent. interest thereon, and other notes and a mortgage for the other 2 per cent. were given to Francis Smith & Co. No more interest was charged; for, as we have seen, a commission paid to one not acting as the agent of the lender, by authority express or implied, is not a part of the interest. If excessive interest had been charged, the transaction would be void as a whole, all securities growing out of it would be void, and ignorance of the holder could save no security. *German Bank* v. *DeShon*, 41 Ark., 331. But, if excessive interest was not charged, was there any usury in the transaction to blight the obligations, even as against one who knew that excessive commissions had been paid to another than the lender or his authorized agent?

In determining whether commissions paid to an intermediary will avoid a contract for usury, the lender's knowledge thereof is material, not because ignorance will protect him against usury, but because his knowledge and acquiescence will imply authority for an exaction not expressly authorized, and make that the act of the lender which otherwise would be the act of the person who was agent only to make lawful loans. But, waiving this matter, the commission was paid to Granger while assuming to act for the lender, and when Scruggs believed that he had authority in the premises. By color of such authority he exacted unlawfully, and Scruggs paid without consideration, $60 for commissions. That he was authorized to represent Francis Smith & Co., we are satisfied. He was Smith's agent, just as Ocobock in the Banks case (*ante* p. 40) was the agent of the Corbin Bank. The only difference is that in this case the lender did not authorize the sub-agency, either expressly or by knowledge of and acquiescence in it, while in that case he did. We therefore treat the payment of a commission to Granger as if made to Smith & Co., and in that view inquire if Smith & Co. can recover. Our conclusion is that they cannot, as the payment of commission was unlawfully exacted and made without consideration; the amount of it should, when

Smith & Co. invoke equitable relief, be credited on the debt due them.    As that satisfies their debt, they are entitled to no relief.

It is also urged that the company cannot recover because it did business in Arkansas without having an agent in the State with a known place of business upon whom process could be served.    Const. 1874, art. 12, sec. 11.    We do not think it appears from the testimony that the company did business in the State at the time of making the loan.    The agreement for the loan was made in Mississippi, and the notes and securities delivered and the money paid there.

4. Foreign corporation doing business in the State.

The decree, in so far as it concerns the Scottish-American Mortgage Company, will be affirmed; in so far as it dismissed the bill against Francis Smith & Co., and grants the prayer of their cross-bill, it will be reversed, and a decree rendered here dismissing the cross-bill and granting the prayer of the original bill.