JONES *v.* PHILLIPPE.

Opinion delivered October 14, 1918.

1. USURY—BURDEN OF PROOF.—The burden of proof is on the party who pleads usury to show clearly that the transaction is usurious.

2. SAME—KNOWLEDGE OF BORROWER.—To constitute usury, there need not be, under our statute, a mutual agreement to give and receive unlawful interest; it is sufficient if it be actually received, taken, secured, or agreed to be taken and reserved, and it may be reserved by the lender without the knowledge of the borrower.

3. SAME—BONUS PAID TO BROKER.—Where a loan of money was made at the highest rate of interest, and the lender, contemporaneously with the contract and as part consideration of it, received part of a bonus paid by the borrower to a broker for procuring the loan, the loan is usurious.

Appeal from Madison Chancery Court; *B.* *F.* Mc-*Mahan,* Chancellor; affirmed.

*Harvey Combs* and *W. N. Ivie*, for appellant.

1. The plea of usury is not sufficient. It fails to allege a corrupt intent or agreement. 4 Ark. 44; *Ib.* 410. A corrupt agreement and the intention to take or reserve more than the legal rate of interest are essential and must be averred. 26 *Id.* 356. The burden is on the party who pleads usury. 74 Ark. 241; 83 *Id.* 31; 105 *Id.* 653. The written contract is legal on its face and a parol contract to take usury must be shown by clear and convincing evidence. 83 Ark. 31; 105 Id. 653.

2. The evidence does not show usury. 62 Ark. 99. Usury must be proven; it is never implied. 91 *Id.* 458; 87 *Id.* 534. There must be an agreement to receive and to give a greater rate than 10 per cent. 54 Ark. 566; 83 *Id.* 31.

3. A sum paid by the borrower to his own agent to procure the loan is not usury. 51 Ark. 534; 4 L. R. A. 462; 14 Am. St. 73.

*E. B. Wall,* for appellee.

1. The contract is clearly usurious. Kirby's Digest, § § 5389, 5394. Here the interest and the bonus or commission paid the agent of the lender with his knowledge, and divided with the lender makes a clear case of usury. Ignorance or mistake is no protection. 2 Cowen, 678; 4 Scam. 29; 1 Porter, 96; 62 Ark. 379; 41 Ark. 331; 62 *Id.* 379; 51 *Id.* 534; 51 *Id.* 546; 123 *Id.* 612; 126 *Id.* 155; 68 *Id.* 164.

2. The death of Mrs. Phillippe was duly suggested and proven. There was no request for revivor but the case went to trial without objection. Kirby's Digest, § § 6298, 6317; 69 Ark. 215; 31 *Id.* 319; 93 *Id.* 307; 16 *Id.* 168; 39 *Id.* 235; 51 *Id.* 82; 69 *Id.* 215; 81 *Id.* 462.

See also 31 Ark. 319; 56 *Id.* 324; 81 *Id.* 462; 93 *Id.* 307; 127 *Id.* 159, 498; 105 *Id.* 222; 128 *Id.* 155; 103 *Id.* 601.

3. As to the usury the decree of the chancellor is correct. 54 Ark. 50; 41 *Id.* 331; 51 *Id.* 534.

WOOD, J. This action was brought by appellant against appellees to recover a balance alleged to be due

on a promissory note and to foreclose a mortgage on certain real estate executed to secure the note. The note, on its face, was for the sum of $300 with interest at the rate of 10 per cent. per annum. The defense was a plea of usury.

Appellee, M. J. Phillippe, testified concerning the execution of the note as follows: "Through Mr. Nunnelley I borrowed the money from Alfred Hawn to pay off the indebtedness against the land. I borrowed $300 from Mr. Hawn which I understood covered the amount due against the land together with interest and also cost of suit. We executed to Mr. Hawn our note for $300 and a mortgage on the land to secure the same. I gave Mr. Nunnelley, as I said in my examination in chief, the sum of $15 to secure this loan for me. I was in the State of Oklahoma at the time and I live in Oklahoma now. The $15 was paid to Mr. Nunnelley for securing me the loan and the note given to Mr. Hawn for the $300 drew 10 per cent. only. My wife died on the 18th of July, 1917. The deed to this land was made to me and my wife jointly, and I now own the land and no one else has any interest in it. I own now all the interest that my wife owned prior to her death."

Alfred Hawn testified: "The note in suit was made to me. The first suit was started and I furnished Mr. Phillippe the money to pay for the original debt. I just loaned Mr. Phillippe $300. My recollection is that Mr. Nunnelley came to me and told me that Mr. Phillippe was giving him $15 to procure this loan of $300 and I don't remember how much of the $15 he gave me but it is my best impression that I and Sam Nunnelley divided the $15. After I loaned the $300 I sold and transferred the note and mortgage to Mrs. Sarah E. Jones. I know that I got some of the $15 but don't know how much I got for letting Mr. Phillippe have the $300.

The court found that: "The defendant's plea of usury should be sustained; that, in the contract for the loan of said money, the said Alfred Hawn in addition to the 10 per cent. interest specified in

said note, took and received a further additional sum of money for the forbearance of said loan, and that said note became and is void. The court further finds that the defendant and cross-complainant, Lela Phillippe, departed this life July 18, 1917, and that her death was suggested and admitted in open court, and said cause proceeded to a hearing without objection from either party." The court entered a decree dismissing appellant's complaint for want of equity, from which is this appeal.

(1) "The burden of proof is on the party who pleads usury to show clearly that the transaction is usurious." *Holt* v. *Kirby,* 57 Ark. 251, 256; *Citizens Bank* v. *Murphy,* 83 Ark. 31, 36; *Smith* v. *Mack,* 105 Ark. 653.

In *Scruggs* v. *Scottish Mortgage Co.,* 54 Ark. 566, 569, we said: "To constitute usury, there must be an agreement to pay for the use of money more than 10 per cent. interest." And in *Citizens' Bank* v. *Murphy, supra,* we said: "To constitute usury, there must be an agreement on the part of the lender to receive, and on the part of the borrower to give, for the use of the money, a greater rate of interest than 10 per cent."

In *Garvin* v. *Linton,* 62 Ark. 370, 379, Judge Battle, speaking for the court, said: "There need not be, under our statute, a mutual agreement to give and receive unlawful interest to constitute usury. If it be actually reserved, taken, or secured, or agreed to be taken or reserved, the contract is void for usury. As it may be reserved, taken, or secured by contract without the knowledge of both parties, a concurrence of the intent of both of them is not an essential element of usury under the statute. There must be an intent to take unlawful interest to constitute usury."

When the language in these cases is taken in connection with the facts under review therein, there is no conflict in the decisions, and the law as announced in *Garvin* v. *Linton, supra,* must be taken as the settled law in this State. The reason for the rule there announced is force-

fully stated by Mr. Justice Mitchell in *Lukens* v. *Hazlett*, 37 Minn. 441, quoted by Judge BATTLE in *Garvin* v. *Linton, supra,* as follows: "There are some loose statements in the text books, and perhaps some judicial authority, to the effect that, to render a contract usurious both parties must be cognizant of the fact constituting usury, and must have a common purpose to evade the law. But it seems to us that it would be contrary both to the language and policy of the usury law to hold any such doctrine, as thus broadly stated. These laws are enacted to protect the weak and necessitous from oppression. The borrower is not *particeps criminis* with the lender, whatever his knowledge or intention may be. The lender alone is the violator of the law, and against him alone are its penalties enacted. It would indeed be strange if the only party who could violate the law had intentionally done so, and could escape its penalty because, by some device or deception, he had so deceived the borrower as to conceal from him the fact that he was taking usury."

Now, it matters not whether Nunnelley be regarded as the agent of the borrower, or as the agent of the lender, or as the agent of both, in conducting the negotiations and in consummating the contract between the appellees and Hawn, because the undisputed evidence clearly justifies the conclusion that Hawn intentionally received, in addition to the 10 per cent. specified in the note, a bonus from Nunnelley for making the loan. The evidence shows that this payment of the bonus was contemporaneous with the contract evidenced by the note, and was part of the consideration for it. It could hardly be contended that if the makers of the note at the time of its execution had paid to Hawn the sum of $7.50 as a bonus for making the loan in addition to the 10 per cent. specified in the note, that such transaction would not be usurious. Yet in legal effect this is precisely what was done, because Nunnelley told Hawn that he was receiving from the appellees the sum of $15 which he was dividing with him for the purpose of obtaining the loan. The evidence clearly sustains the finding of the trial court "that in the contract for the

loan of said money the said Alfred Hawn, in addition to the 10 per cent. interest specified in said note, took and received a further and additional sum of money for the forbearance of said loan.'' Such is the only reasonable deduction to be drawn from the testimony.

It is undoubtedly true that a borrower may pay a fee or bonus to his agent who procures a loan for him, and where this is done before or after the contract for the loan is executed, it is no concern of the borrower what disposition his agent may make of the bonus thus received. The agent of the borrower may do as he pleases with his own money, and if on his own account, and not as the agent of the borrower, before or after a loan has been consummated by him, he pays to the lender a certain sum in consideration of making the loan, the sum paid under such circumstances could not be considered, between the borrower and the lender, as for the use of the money. Such is the effect of our holding in *Sumpter* v. *Hot Springs Savings, Trust and Guaranty Co.,* 126 Ark. 155, where we said: ''If the person making the loan acted as the agent of the borrower alone, whether he received or did not receive a bonus is immaterial on the plea of usury; what the borrower pays to his own agent for procuring a loan is no part of the sum paid for the loan or forbearance of money.'' But here as we have shown, the transaction was but tantamount to the lender receiving direct from the borrower a bonus in excess of 10 per cent. per annum for the forbearance of his money.

(2) The decree recites that ''the defendant and cross-complainant, Lela Phillippe, departed this life July 18, 1917, and that her death was suggested and admitted in open court and said cause proceeded to a hearing without objection from either party.'' Appellee, M. J. Phillippe, testified as follows: ''The deed to this land was made to me and my wife jointly, and I now own the land and no one else has any interest in it, or in other words, I mean to say that I own now all of the interest that my wife owned prior to her death.'' It does not appear that there was any request in the court below to have the cause

revived in the name of the heirs of Lela Phillippe. The recitals of the decree show that the cause proceeded, after her death was suggested, to a hearing without objection from either party and was evidently disposed of upon the theory that M. J. Phillippe was the sole owner of the land and the only party in interest as defendant and cross-complainant. His testimony tended to prove that such was the case and there is no testimony in the record to the contrary. It must be presumed therefore, in favor of the decree of the trial court that it found that an order of revivor was unnecessary. The decree is therefore affirmed.

Mr. Justice HUMPHREYS not participating.

McCULLOCH, C. J., (dissenting). The facts are undisputed and the case made out in the record is one where borrowers, by contract with their own agent, agreed to pay the latter a commission of $15 as compensation for procuring a loan of $300 from some third party or parties; the agent applied to the lender and agreed to divide the commission, which the lender accepted in addition to charging the borrower the highest legal rate of interest. The contract between the borrowers and their agent for payment of the commission was an independent one to which the lender was not a party; and the subsequent contract between the lender and the borrowers' agent to divide the commissions was also an independent one to which the borrowers were not parties. In other words, the payment to the lender of a portion of the commission was a mere gratuity on the part of the borrowers' agent. He paid his own money which he earned under his valid contract with the borrowers, and it was, therefore, not the borrowers' money which the lender received in addition to the interest.

There is not the slightest evidence in the record of collusion between the borrowers' agent and the lender to exact from the borrowers, by secret device or scheme, a sum in addition to the legal rate of interest, nor is there

any evidence that the agent who procured the loan was the agent of the lender. Does this state of facts constitute usury? The question is plainly answered in the negative by Mr. Webb in his work on Usury (Sec. 97) in the statement that "where a loan is negotiated through a broker, who, by arrangement with the borrower, received commissions for effecting the loan, the fact that the broker allowed the lenders to share in such commissions, in order to induce them to take the loan, will not brand the transaction as usurious, when it is shown that such action on the broker's part was a mere gratuity, and not part of a scheme to avoid the laws against usury." The following cases are cited, and they fully support the text: *Eslava* v. *Crampton*, 61 Ala. 507; *Dickey* v. *Brown*, 56 Iowa, 426; *Collamer* v. *Goodrich*, 30 Vt. 628.

The same author makes this further statement: "In this class of cases, as in all others, usury may be concealed in an apparently legal transaction. If by any secret arrangement between the borrower's agent and the lender, the latter is to receive any portion of the commissions paid by the borrower to his agent, the transaction is tainted with usury."

This means, of course, that where there is a secret arrangement between the borrower's agent and the lender that a commission is to be exacted from the borrower and a portion of it paid over to the lender, this constituted a mere cloak for usury and renders the contract usurious.

The authorities cited in the opinion of the majority are instances where the lender has received from the borrower a sum in excess of the legal rate of interest as a bonus or commission, but none of the cases cited involve a state of facts where a commission was paid by some person other than the borrower himself. It is unimportant that the borrower's agent paid it out of his own commission, for in that case it was the agent's money and not the borrower's which was paid in excess of the legal rate of interest. I understand the usury laws to mean that a contract between the borrower and lender for payment of interest in excess of the legal rate is usurious and void,

and that a contract whereby the lender is to take or receive from the borrower by any device or cloak whatever a sum of money in excess of the legal rate of interest is likewise void.

The transaction now under consideration does not fall within the ban of the law, for the reason that there was neither a contract between the borrower and the lender for the payment of excessive interest, nor did the lender take or receive from the borrower any sum of money in excess of the legal rate of interest.