## BRIANT *v.* CARL-LEE BROTHERS.

### Opinion delivered April 2, 1923.

1. APPEAL AND ERROR—CONCLUSIVENESS OF FINDING.—In an action on a note, a general finding of the trial court for plaintiffs would embrace a finding that money loaned was that of plaintiffs, and where there was evidence to sustain that finding it is as conclusive as the verdict of a jury.

2. APPEAL AND ERROR—TRIAL BY COURT—PRESUMPTION.—Where a cause was tried by the court sitting as a jury, and no declarations of law were asked by appellant, it will be presumed that the court applied correct legal principles to the facts which the testimony tended to prove.

3. USURY—BURDEN OF PROOF.—The burden of proof is on the party who pleads usury to show clearly that the transaction was usurious.

4. USURY—ESSENTIALS.—To constitute usury, there must either be an agreement by which the borrower promises to pay, and the lender knowingly receives, a higher rate of interest than is legal, or such greater rate of interest must be knowingly and intentionally reserved, taken or secured; and it is essential that there was a loan or forbearance of money, and that for such forbearance there was an intent or agreement to take unlawful interest, and that such unlawful interest was actually taken or reserved.

5. USURY—PRESUMPTION.—The wrongful act of usury will never be imputed to the parties, and will not be inferred when the opposite conclusion can be reasonably and fairly reached.

6. USURY—SUFFICIENCY OF EVIDENCE.—Evidence *held* to justify a finding that a note given for the loan of money was free from usury, and that the maker was bound by her contract.

7. USURY—COLLATERAL AGREEMENT.—A parol collateral agreement to pay a bonus to certain parties to a contract for the purchase of an oil and gas lease, contingent on the subsequent sale of the lease at a profit, was not a part of the contract of purchase of the lease so as to vitiate the note given for its purchase.

Appeal from Pulaski Circuit Court, Third Division; *A. F. House,* Judge; affirmed.

*U. A. Gentry* and *J. H. Carmichael,* for appellant.

Carl-Lee Bros. could not maintain suit in their own name. Suit must be brought in name of real party in interest. *Johnson* v. *Ankrum,* 131 Ark. 557. All the money belonged to Mrs. Vaughan, and the suit against her was simulated, not *bona fide,* and the court erred in allowing suit to proceed, over objection made, in name of appellees. Bringing suit in name of appellees was part of the scheme to cover up usury. R. C. L. 211, sec. 12. Contract or note was usurious. Sec. 7354, Crawford & Moses' Dig., § 7353, 7363, *Id.* *Garvin* v. *Linton,* 62 Ark. 370. All the testimony shows that Taylor offered to pay $300 in addition to the 8 per cent. interest for the use of $1,500 for 90 days, and that Carl-Lee Bros. and Mrs. Vaughan agreed, and furnished the money on that agreement. This brings case within rule of *German Bank* v. *Deshon,* 41 Ark. 331. We have one case very much like the explanations offered by appellees. *Humphrey* v. *McCauley,* 55 Ark. 143.

*Will G. Akers* and *G. Denison Cherry,* for appellees.

Carl-Lee Bros. were the parties in interest, and action properly maintained in their name. Secs. 7817, 7761, Crawford & Moses' Digest. Holder may sue in his own name. *Craig* v. *Palo Alto Stock Farm,* 16 Idaho 701, 102 Pac. 393; *Utah Implement Co.* v. *Kenyon,* 30 Idaho 407,

164 Pac. 1176; *Harrison* v. *Pearcy*, 174 Ky. 485, 192 S. W. 513. At common law holder of legal title to note can sue in his own name. *Chaffee* v. *Shortie*, 46 Okla. 199, 148 148 Pac. 686; *Fay* v. *Hunt*, 190 Mass. 378, 77 N. E. 502; *Harris* v. *Johnson*, 75 Wash. 291, 134 Pac. 1048. *Johnson* v. *Ankrum*, cited, not in point in appellant's contention. Mrs. Vaughan had no interest in the money. Contract not usurious. 91 Ark. 458; 25 Ark. 258; 144 Ark. 573. Burden of proof on party pleading usury. 105 Ark. 653 and cases cited. No declarations of law were given or refused, and court is presumed to have applied correct legal principles. *Greenspon* v. *Miller*, 111 Ark. 190; *Blass* v. *Lee*, 55 Ark. 329 The findings of circuit court sitting as a jury of same effect as verdict of jury. *Rice* v. *Metropolitan Life Ins. Co.*, 152 Ark. 498. Valid contract not rendered usurious by later contract. *Walter* v. *Adams*, 138 Ark. 411; *Haynes* v. *Stevens*, 62 Ark. 491. The payment of the bonus was contingent on a profit in the transaction, and did not render transaction usurious. 56 Ark. 335; 81 N. W. 1098; 52 N. E. 690. Material difference between interest and what is termed "profit." 130 Ark. 116; 133 Fed. 462; 19 Atl. 685. Also had right to pay brokerage. 27 R. C. L. 236; 51 Ark. 534; 11 S. W. 878, 14 A. S. R. 73; 4 L. R. A. 426; 57 Ark. 251; 68 Ark. 162; 105 Ark. 653.

WOOD, J. The appellees, Reuben B. Carl-Lee, Edward A. Carl-Lee and Frank M. Carl-Lee, are partners doing business under the firm name of Carl-Lee Brothers. They instituted this action against Mrs. R. T. Briant, the appellant, C. J. Blount, Mrs. Frank Vaughan, Joe Johnson, Charles E. Taylor and Charles E. Becker. They alleged that the defendants executed and delivered to plaintiffs a promissory note in the sum of $1,500, due in ninety days, with interest at the rate of eight per cent. per annum from maturity until paid; that the note was past due and unpaid. They pray for judgment on the note.

Mrs. Briant answered and admitted that she, with the others, executed the note set up in the complaint. She alleged that she signed the note on the representations of Charles E. Taylor that the note was secured by a trust agreement held by J. W. Mehaffy of Little Rock, Arkansas, and that the plaintiffs were put on notice of such agreement; that, but for such representations and understanding, she would not have signed the note; that the representations made to her were false and fraudulent, and that she was relieved from any responsibility on said note; that she was informed and believed that no mortgage or lien or other security was ever given; that plaintiffs knew of the representations that were made to her by Taylor to induce her to sign the note. She also set up that the sum of only $1,500 was advanced to her, whereas it was agreed by the plaintiffs through the defendant, Mrs. Vaughan, that, as part of the interest and for the use of the money, the sum of $300 should be paid, which rendered the note usurious and void. Mrs. Briant's answer was filed January 9, 1922, and on February 13 judgment by default was taken against the other defendants.

The appellees introduced in evidence the note of February 15, 1921, signed by the appellant and the other defendants mentioned in the complaint. The note recited as follows: "Ninety days after date, for value received, we promise to pay to the order of Carl-Lee Brothers (England, Arkansas) fifteen hundred dollars ($1,500), with interest at the rate of eight per cent. per annum from maturity until paid. The makers and indorsers of this note hereby severally waive presentment for payment, notice of nonpayment and protest, and consent that the time may be extended without notice thereof. This note is given for part of purchase price on the following described lands in Union County, Arkansas. This note is further secured by a certain trust agreement held by J. W. Mehaffy of Little Rock, as trustee. A lien is reserved on said property as security for the payment of this note, which is number —— of a series of

——— notes. If this note is not paid on maturity, all unpaid notes of this series shall become and be due and payable at once."

The testimony of C. E. Taylor, who negotiated for appellant and the others the loan for which the note was executed, was to the effect that, in order to get the loan through, he had to promise that a $300 bonus would be paid for the use of the money, and he was to receive one-half of the bonus for himself, and was to contribute $50 or more to the $300. He was also required to execute a first mortgage on certain property he owned in Little Rock to secure the loan. He exhibited an instrument which he testified was a part of the transaction. By this instrument J. W. Mehaffy was constituted as trustee for the signers of the note, and the instrument recited that they had given to the trustee a check for Carl-Lee Brothers for $1,500 drawn on the England Bank of England, Arkansas. The instrument directed J. W. Mehaffy, when the money was received on the check, to pay the sum to one P. A. Griffin as part payment on a certain oil and gas lease described therein as purchased from Griffin by W. H. Martin. The instrument directed Mehaffy, as trustee, to receive from Martin for the signers the sum of $6,300 and directed him to pay out of said sum $1,800 to Carl-Lee Brothers and the remaining two-thirds to the signers of the note, and to retain out of the moneys the sum of $250, to be deducted in equal amounts from the sums due the signers of the note. He further testified that it was made clear, in the conference he had with Mrs. Vaughan and one of the Carl-Lee Brothers, when he was negotiating the loan, that the money belonged to Mrs. Vaughan, but had been loaned by her to Carl-Lee Brothers. He stated that at conference the sum of $300 was discussed and agreed upon. He said that all concerned in the borrowing of the money would be very glad to pay it to Mrs. Vaughan or to Carl-Lee Bros., inasmuch as they had offered to pay other people at El Dorado a bonus of $300 to pro-

cure the loan, but had not succeeded in obtaining same. Taylor stated that he executed his note, secured by mortgage on his property mentioned, for the sum of $1,650. He was to make good that sum, and the other $150, when paid to the trustee and paid to Taylor, was to be retained by him. Witness exhibited and read a letter which he had received from Mrs. Vaughan in which, among other things, she said: "The Carl-Lee $1,800— as I understand it—$150 of it goes to you. Of course my brothers will give you check for it as soon as money reaches them." And another letter in which she stated as follows: "Following up the discussion of your suggestion in 'phone conversation that I should bear my part of the Carl-Lee note (my money)." She then states that the parties signing the note were morally obligated to pay $1,800, and further says: "It never occurred to me to want the $300 unless it came, as was expected, as a 'cut in' with others on the profit or commission, and so I think it should appeal to the signers that we *did* regard the $300 as a share of the profits. * * * Again, my brother made it plain to you, by many repetitions, that I could not afford to lose not even a dollar, and you recall that you offered the mortgage upon his insistence that he would not consent to lending my money unless I was protected against any loss, however small. * * * I suppose I could go ahead and pay a part of the $1,800 and hold your note for the part I pay, based upon this agreement you gave my brother to protect me against any loss whatever," etc. And still other letters, in which she stated, among other things, that she realized that the individual note given by Taylor was given in haste and at a time when it seemed there would be a good profit in it for all concerned. She further says: "It was given on the basis of the Carl-Lee Brothers cutting in on the profits, and I have no intention of holding the note for any more than the $1,500." And another letter in which she refers to the fact that the Carl-Lee check was not to be paid out to Griffin until certain conditions had been

complied with, which, she reminded Taylor, had not been done. In this letter she further states: "You told me to sign the note (for my own money) so that the others would not know the Carl-Lees were my brothers or suspicion the money was coming from me. * * * In some way I must have some money in on the note."

Taylor further testified that in the conference he had with Mrs. Vaughan and Carl-Lee, when he got the money, Carl-Lee gave him a check for $1,500 signed by the Carl-Lee Brothers. The check was introduced in evidence. A letter was introduced which was written by Taylor to Mehaffy, in which he states that he had obtained $1,500 from Carl-Lee Bros., a check for which he was inclosing. In this letter he refers to his difficulty in obtaining the money, and stated that he had to make the Carl-Lee Bros. safe in other ways, as they didn't wish to lend their money on an oil deal, and he asked Mehaffy, trustee, to protect him by having the parties interested with him in the commission sign a note for $1,800, with interest at eight per cent. from maturity, etc. He enters into detail in explaining the deal that he was endeavoring to put over. Among other things he states that if the sale of the lease, for any reason, were not made to the respective purchaser, then the seller should return the sum of at least $1,500 to reimburse the Carl-Lees and to relieve him (Taylor) of embarrassment. Further along in his testimony he said that the reason he stated in the letter to Mehaffy that it was Carl-Lees' money was because it was Carl-Lees' money. They requested him to do it. Carl-Lee Bros. gave witness a check on their own account. Witness further stated that he and Mrs. Briant worked in connection with the deal in an effort to put it over. She had this kind of an arrangement with witness. She was concerned in finding leases, and she and witness are working together in disposing of them, and were dividing the commissions. They were in the same office. Mrs. Briant first found the tract involved in this transaction. She got in touch with Mrs. Vaughan, and

then Mrs. Vaughan came to witness to get him to dispose of the lease. The $300 commission referred to was to be paid out of the commission—the first commission that was collected—and those making the sale didn't expect it unless the deal went through. It was understood that if the deal didn't go through Carl-Lee Bros. were only to receive the sum of $1,500. The $300 was to be paid as brokerage to Mrs. Vaughan and witness for finding the money, but was not to be paid unless a profit was made.

Mrs. Briant held the option on the Griffin lease, and it was therefore her property that was the basis for the trade. Witness and his associates sold it to Johnson Investment Company. The trade was agreed upon at the time the witness had the conference with Carl-Lee and Mrs. Vaughan. He advised them at the time that the raising of the $1,500 was necessary to handle the deal. The understanding was that the full amount of $1,800 was to be paid out of the commission that was to be received by witness and his associates in the deal. The reason the $1,800 was not paid was because the parties buying the lease fell down on their payments after the deal was consummated, and didn't go through with the trade. It was the understanding that, if the trade fell through, only $1,500 was to be paid to Carl-Lee Brothers. Witness and his associates made the note for $1,500 only, the amount that in any event would have to be returned to Carl-Lee Brothers. Witness and his associates were to receive a commission of $4,800 from the owner of the lease if the sale of the same had been consummated. When the arrangement was made to pay a bonus of $300, witness contemplated that it would be paid out of their commission. Mrs. Vaughan was interested in the deal.

Mrs. Briant testified that she did not know anything about the contract of getting the $1,500 from Carl-Lee Brothers. Her understanding was that she was to pay her *pro rata* of $300 for the use of $1,500. She did not

have that understanding with Carl-Lee Brothers or Mrs. Vaughan. She signed the trust agreement, and understood positively that $1,800 was to be paid. As it was explained to her, she was paying her part of the $300 for the use of the $1,500 in order to raise money to consummate the deal. The option of the lease belonged to her. It was not mentioned to her that the $300 was only to be paid in case the deal was consummated. The first she knew of the $1,500 was when she was told that it had been procured, and she talked with Mrs. Vaughan over the telephone, and Mrs. Vaughan told her that the $1,500 was raised through her kinspeople, and that Mr. Taylor had put up his property to secure this. If she had not thought the deal was going through, she would not have signed the note for $1,500. She was under the impression that it was Carl-Lee Bros.' money until she saw the letters of Mrs. Vaughan to Taylor. She understood the purpose for which the agreement was drawn up and the full transaction in regard to the deal. After learning that Mr. Taylor was expecting 60 per cent. and Mrs. Vaughan 40 per cent. of the commission, she called them to say there was no need of going further.

The salient facts testified to by Carl-Lee are that the note upon which the cause of action was founded was for money loaned by the Carl-Lee Brothers to the signers of the note. At the time the note was executed Carl-Lee Bros. owed Mrs. Vaughan, their sister, seventeen or eighteen hundred dollars. Witness was asked if it wasn't stated and agreed on in the conference between himself, Mrs. Vaughan and Taylor that Carl-Lee Brothers would put up the money for her, and take the note in their name. Witness answered, "No, I didn't understand it that way at all. I understood that we were to be secured—that's the way—and we were going to hold Mrs. Vaughan; that was the understanding, that she would have to guarantee me against loss." Further on in his testimony he said he accepted a note from Taylor, secured by mortgage on his property, for $1,650

as an additional security for the $1,500. Taylor said he wanted to put half of the profits in the note executed by him—that is, half of the $300 they were to pay to the parties that furnished the money. They agreed to give witness $300 out of the profits as part of the consideration for the loan. Witness wrote Taylor if there were no profits made he didn't hold him responsible for it. The $300 was to be paid out of the profits. The witness categorically denied that he told Taylor that it was Mrs. Vaughan's money. Witness didn't tell Taylor that it was her money, for it was not her money. Witness knew that Mrs. Vaughan was interested in the deal, but positively denied that it was Mrs. Vaughan's money that he was loaning to Chas. E. Taylor and other parties who executed the note.

Upon substantially the above testimony the cause was, by consent, submitted to the court sitting as a jury, and the court found that the appellant was indebted to the appellees in the sum of $1,500, with interest at the rate of 8 per cent. per annum from the 15th of February, 1921, and rendered a judgment in the sum of $1,693.33, from which is this appeal.

1. The appellant contends that the undisputed evidence shows that the money loaned to Taylor and his associates was the money of Mrs. Frank Vaughan, and that therefore the action could not be maintained in the name of Carl-Lee Brothers. The general finding of the trial court in favor of the appellees would embrace a finding that the money loaned to Taylor and others was the money of Carl-Lee Brothers, and not the money of Mrs. Vaughan. The appellant did not ask the court to make any special finding of fact. The findings of fact by a trial court sitting as a jury are as conclusive as the verdict of a jury, and will not be disturbed where there is any substantial testimony to support the same. See *Dunnington* v. *Frick*, 60 Ark. 250, and other cases cited in Crawford's Digest, p. 5051; *Greenspan* v. *Miller*, 111 Ark. 190; *Rice* v. *Metro. Ins. Co.*, 152 Ark. 498.

Certainly it cannot be said that there is no substantial evidence to sustain a finding that the money in controversy was the money of Carl-Lee Brothers, rather than the money of Mrs. Vaughan. Such being the case, we must hold that the finding of the trial court to that effect was conclusive. See *Trumann Cooperage Co.* v. *Crye*, 137 Ark. 293; *Scott* v. *Wis. & Ark. Lbr. Co.*, 148 Ark. 66. Therefore Carl-Lee Brothers had the right to maintain this action.

2. The appellant next contends that the note was void for usury. No declarations of law were asked by the appellant. It will therefore be presumed that the court applied the correct legal principles to the facts which the testimony tended to prove. *Blass* v. *Leigh*, 55 Ark. 329; *Greenspan* v. *Miller, supra*.

To determine whether or not a contract is usurious, the following rules of law have been often announced by this court: "The burden of proof is upon the party who pleads usury to show clearly that the transaction was usurious." *Smith* v. *Mack*, 105 Ark. 653, and cases there cited.

"To constitute usury there must either be an agreement between the parties by which the borrower promises to pay, and the lender knowingly receives, a higher rate of interest than the statutes allow for the loan or forbearance of money; or such greater rate of interest must be knowingly and intentionally 'reserved, taken or secured' for such loan or forbearance. It is essential, in order to establish the plea of usury, that there was a loan or forbearance of money, and that for such forbearance there was an intent or agreement to take unlawful interest, and that such unlawful interest was actually taken or reserved. The wrongful act of usury will never be imputed to the parties, and it will not be inferred when the opposite conclusion can be reasonably and fairly reached." *Briggs* v. *Steele*, 91 Ark. 458-462, and cases there cited. See also *Gillam* v. *Peoples*, 144 Ark. 573.

Now, the note which is the foundation of this action on its face does not bear the taint of usury. Applying the principles of law to the facts as they might have been found by the court, we are convinced that the ruling of the court that the transaction was free from usury was correct, and that the appellant is bound by the contract. As we have already stated, the testimony justified a finding that the money was the money of Carl-Lee Brothers and not the money of Mrs. Vaughan.

3. The trial court was also warranted in finding that the $300 referred to in the testimony of Mr. Taylor as a bonus to be given the lenders was in reality nothing more nor less than brokerage that was to be paid to him and Mrs. Vaughan for finding the money. For Taylor, in his testimony, says: "Ques. It was not your intention to pay more than $1,500 unless a profit was made on the transaction, and this $300 was to be a part of the profits and no interest on the money? That is a fact?" "Ans. It was brokerage to Mrs. Vaughan and me for finding the money." "Ques. All right, but was not to be paid unless a profit was made?" "Ans. No, sir."

Therefore, if it be conceded that Carl-Lee Brothers would not have loaned the $1,500 to Taylor and his associates on the note except upon the inducement that Taylor and Mrs. Vaughan promised to give Carl-Lee Brothers a bonus of $300, nevertheless it is quite clear that the court might have found that the only promise exacted of the appellant and the other makers by Carl-Lee Brothers was that they should pay for the use of the $1,500 only eight per cent. interest. The $300 bonus promised to Carl-Lee Brothers was based wholly upon the contingency that the lease would be sold and a profit or commission realized therefrom by Taylor and his associates. The testimony of both Carl-Lee and Taylor shows that it was the understanding that Carl-Lee Brothers was not to get any bonus unless there was a profit or commission realized by the sale of the lease,

This arrangement did not enter at all into the contract evidenced by the note in which the appellant and others promised to pay only the sum of eight per cent. for the use of the money loaned to them by Carl-Lee Brothers. The note evidenced an absolute contract to that effect, and it does not include within its terms an agreement to pay any more than such rate of interest, which is not in excess of the highest contractual rate of interest authorized under our Constitution and statutes. Art. 19, § 13 of the Constitution; § 7362, C. & M. Dig. The contingency upon which the bonus was to be paid was wholly foreign to the agreement to pay so much for the use of the money.

In *Reeve* v. *Ladies' Building & Loan Assn.*, 56 Ark. 335, we said: "There is, then, in the transaction an element of uncertainty, a hazard, that seems to exclude the idea of a loan of money at a usurious rate of interest. Where the promise to pay a sum above legal interest depends upon a contingency, and not upon the happening of a certain event, the loan is not usurious. Citing *Spain* v. *Hamilton's Admr.*, 1 Wall. 604; Tyler on Usury, p. 98; *Lloyd* v. *Scott*, 4 Pet. 205; *Parker* v. *Fulton Loan & Bldg. Assn.*, 46 Ga. 166. It occurs to us that the court, from the testimony set forth in this record, was certainly justified in finding that there was no device, shift, or cloak in the transaction between Carl-Lee Brothers and Taylor to cover up a usurious contract for the loan of money. The contract for the use of the money only contemplated the payment of eight per cent. interest unconditionally. The contract for the payment of the bonus as an inducement for making the loan was based wholly upon a contingency, an uncertain event, which event never happened. Such a contingency as that cannot be held to vitiate a valid contract for the loan of money at a lawful rate of interest.

The judgment of the court is therefore correct, and it is affirmed.