Brittian, Administrator, *v.* McKim.

4-6822                               164 S. W. 2d 435

Opinion delivered July 6, 1942.

*Opie Rogers,* for appellant.

*W. F. Reeves,* for appellee.

Mehaffy, J.   On December 5, 1940, Dr. A. J. Brittian filed suit in the Van Buren chancery court against Frank McKim and Mavis McKim, his wife, alleging that the appellees were indebted to him in the sum of $428.45, for which certain promissory notes had been given.   A mortgage was properly executed and delivered to appellant to secure the payment of said notes. On October 30, 1940, Dr. A. J. Brittian brought suit in the Van Buren chancery court against the appellees, Vernon McKim and Edith McKim, his wife, for the sum of $1,263.01; alleged

that certain notes were given for this amount, and appellees, Vernon McKim and Edith McKim, executed and delivered to appellant their mortgage on certain real property to secure the payment of said indebtedness.

On January 6, 1941, S. L. Collums filed an intervention alleging that prior to the date suit was filed the appellee, Frank McKim, being indebted to him in the sum of $377, conveyed the lands mentioned in plaintiff's complaint to intervener by warranty deed, and that the sums credited on the indebtedness alleged to be due the plaintiff were not indorsed on the margin of the record of the mortgage within five years after the maturity of all the notes except the last one, and claimed a prior lien; that he was a third party and that all the notes except the last one were barred by the statute of limitations; that the notes given by McKim to appellant were usurious and void, and the said notes and mortgage should be canceled and the intervener decreed the first rights in said land.

Thereafter Dr. A. J. Brittian filed answer to the intervention and denied each and every allegation of the intervention.

Answer was filed in each of these suits pleading the statute of limitations and usury. There was also an intervention filed by Collums in the second suit and an answer filed denying each and every allegation in the intervention.

On April 8, 1941, in the case of A. J. Brittian v. Frank McKim and others, and also in the case of A. J. Brittian v. Vernon McKim and others, the death of Dr. A. J. Brittian was suggested and admitted, and the causes revived in the name of W. L. Brittian, administrator of the estate of A. J. Brittian. On July 7, 1941, the two cases were consolidated for trial by agreement.

W. E. Castleberry testified in substance that he was the agent of and working for Dr. W. L. Brittian in the administration of the affairs of Dr. A. J. Brittian; that he had the papers, etc., of Dr. A. J. Brittian, in case No. 610, and A. J. Brittian v. Vernon McKim and Edith McKim;

he exhibited the nine original notes and made them exhibits to his testimony; introduced the real estate mortgage executed by Vernon and Edith McKim; in case No. 611, Dr. A. J. Brittian v. Frank McKim, *et al.*, he identified and introduced six notes, and identified and exhibited the real estate mortgage; that no credits were put on the notes, but he made a statement on paper saying that the credits on the notes were as follows: "credit on note $78.30, 10/23, 1933, $25; credit note $70.30, 10/24, 1936, $20; credit on note $65.30, 11/12, 1937, $25; credit on note $70.30, 9/30, 1938, $50; credit on note $78.30, 10/29, 1940, $30." The notes were lost at the time the suit was filed, but were afterwards found. Witness got the credits from receipts given by Dr. Brittian to Frank McKim, and Frank McKim said that these were the only payments made; Frank McKim did not direct him to put the payments on the notes; put the credits on each note to protect the interest of Dr. Brittian; the notes were made out for correct amount with interest at 10 per cent.; never asked usury of anyone.

Frank McKim, one of the appellees, testified admitting that the five notes and mortgage introduced are the ones he executed; was indebted to the plaintiff at the time in the sum of $250; that Brittian wrote him a note to come down and they would fix the papers any way witness wanted them; that he wanted to make the notes for $50 and let each note draw its own interest, but Dr. Brittian would not agree to this; Dr. Brittian said he would figure the interest in the first of the notes and these notes would not draw any interest the first year if they were paid when they became due; the interest was figured in the notes and witness did not want it that way, but Dr. Brittian said, "you can or else," so witness agreed; at that time Dr. Brittian had a vendor's lien on the same land; witness took up the old notes and gave new ones; Brittian added the vendor's lien in the deed and put the mortgage on record; that he made notes for the land, but no deed was ever made; six notes were given and he says he thinks he paid $400; the notes are renewal notes made to Dr. Brittian in 1931; witness claims he charged more than 10 per cent., but he made no complaint

and tried to pay it; witness says he told Mr. Reeves he thought Dr. Brittian was charging him too much interest; this was while Dr. Brittian was bedfast; did not make any complaint until after Brittian was sick; has owed for the land 16 years and still owes for it; Dr. Brittian had a lawyer to make out the notes at Conway and witness knew nothing about what they contained when he signed; he did not discover at that time that there was any usury in them.

Vernon McKim testified in substance that Dr. Brittian had the notes for Frank McKim prepared and Frank had nothing to do with it; witness was indebted to Brittian at the time in the sum of $450; he took the notes back and fixed them up before his uncle sent them back; wanted the notes to pay $50 a year and pay the interest on the notes as they came due; but Brittian did not want to make it that way; witness made two payments; the first time he gave a bale of cotton and later gave $40; does not remember what cotton was selling for, or what year it was; witness gave the note sued on in place of other notes; there are six notes for $100 each, one for $102; seems to witness they were made for a sum more than 10 per cent.; has not paid taxes for a good while; guesses he paid the tax up to 1937; Dr. Brittian paid up the tax on them.

S. M. Collums testified in substance about filing his intervention, and that he took a deed of trust on this land November 7, 1940; Frank McKim gave him a warranty deed and he had the deed recorded; when he took the deed he examined the mortgage in the clerk's office; in case No. 610 he took a mortgage from Vernon McKim for $180 and it is recorded; no suit was pending at the time he took the mortgage.

Farish Fraser testified about the mortgage being on record from Vernon McKim and wife to A. J. Brittian, and that there had been no credits on the margin of the mortgage record prior to October 28, 1940, and there are none now; at page 545 witness finds a real estate mortgage from Frank McKim and wife to Brittian and there had been no credits on the margin of the record.

The mortgages from Vernon McKim and wife to Collums and Frank McKim and wife to Collums had been recorded.

The court found in favor of the defendants in each case and ordered that the mortgages be canceled, and that the plaintiff pay all costs. The case is here on appeal.

The appellees say that this case presents two defenses on the part of the appellees; the statute of limitations and usury. There is practically no evidence as to usury, except that of the defendants, and they testify as to transactions and conversations with the deceased, which testimony is incompetent.

The constitution provides: "In civil actions no witness shall be excluded because he is a party to the suit or interested in the issue to be tried. Provided, that in actions by or against executors, administrators, or guardians in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transactions with or statements of the testator, intestate or ward, unless called to testify thereto by the opposite party." Section 2 of the schedule of the Constitution of the State of Arkansas.

This court said in the case of *Lasker-Morris Bank & Trust Co.* v. *Gans,* 132 Ark. 402, 200 S. W. 1029: "But we try chancery cases *de novo,* and it is our duty as well as that of the chancellor to disregard incompetent testimony."

When we have disregarded this incompetent testimony, we are of opinion that the finding of the chancellor was against the preponderance of the evidence; that there is practically no evidence tending to support the plea of usury.

In many cases where incompetent testimony is introduced without objections, such testimony might support a finding of the court. In the case of hearsay testimony, which is inadmissible, the court holds that where introduced without objection, it is sufficient to support a finding of the court or a verdict of the jury. But the case here is very different. There is no constitutional provi-

sion prohibiting the introduction of hearsay testimony, and in this case the constitution expressly provides that neither party shall be allowed to testify against the other as to any transactions with or statements of the testator. But as we have already said, we try chancery cases *de novo,* and it is our duty, as well as the duty of the chancellor, to disregard this incompetent testimony. And without this testimony, which was wholly incompetent, there is no evidence to support the plea of usury.

We think, from a calculation of the amounts and interest on the notes, that they show that there was no usury charge.

In § 13 of art. 19 of the constitution it is provided that all contracts for a greater rate of interest than ten per cent. per annum shall be void.

In the case of *Bauer* v. *Wade,* 170 Ark. 1020, 282 S. W. 359, it was said: "In construing this section of the constitution and the statutes passed pursuant to its directions, it had been held that a mutual agreement to give and receive unlawful interest is not necessary to constitute usury, but that there must have been an intention on the part of the lender to take or receive more than the legal rate of interest. *Garvin* v. *Linton,* 62 Ark. 370, 35 S. W. 430, 37 S. W. 569; *Jones* v. *Phillippe,* 135 Ark. 578, 206 S. W. 40."

In the case of *Briggs* v. *Steele,* 91 Ark. 458, 121 S. W. 754, it is said: "To constitute usury, there must either be an agreement between the parties by which the borrower promises to pay, and the lender knowingly receives, a higher rate of interest than the statute allows for the loan or forbearance of money; or such greater rate of interest must be knowingly and intentionally 'reserved, taken or secured' for such loan or forbearance. It is essential, in order to establish the plea of usury, that there was a loan or forbearance of money, and that for such forbearance there was an intent or agreement to take unlawful interest, and that such unlawful interest was actually taken or reserved.

"The wrongful act of usury will never be imputed to the parties, and it will not be inferred when the op-

posite conclusion can be reasonably and fairly reached.'' See, also, *Scruggs* v. *Scottish Mortgage Co.,* 54 Ark. 566, 16 S. W. 563; *Garvin* v. *Linton,* 62 Ark. 370, 35 S. W. 430, 37 S. W. 569; *Leonhard* v. *Flood,* 68 Ark. 162, 56 S. W. 781; *First National Bank* v. *Waddell,* 74 Ark. 241, 85 S. W. 417, 4 Ann. Cas. 818; *Citizens' Bank* v. *Murphy,* 83 Ark. 31, 106 S. W. 697; *Eldred* v. *Hart,* 87 Ark. 534, 113 S. W. 213; *Briant* v. *Carl-Lee Bros.,* 158 Ark. 62, 249 S. W. 577.

In each of these cases there was one debt for the land, but there were several notes given. The rule is stated in 48 C. J. 663, as follows: ''Where two or more debts are kept separate and distinct from each other, the law will apply partial payments to the satisfaction first of the interest, then of the principal of the debt first falling due, and, following that, first the interest, then the principal of each succeeding debt in order. But where there is in reality but one debt represented by different notes maturing at different times, the payment should first be applied to the interest due on the whole debt.''

This court, in the case of *Rich* v. *Hankins,* 203 Ark. 1082, 160 S. W. 2d 44, after citing the rule in 48 C. J., and other cases, said: ''In the light of the above authorities, we think that the payments, *supra,* were an acknowledgment of the entire indebtedness as a single debt and that the payments made should first have been credited to the interest on the entire indebtedness and not credited to any single note, and that the last payment, *supra,* March 21, 1936, of $15 kept the debt alive and the five-year statute of limitation is not a bar to appellant's cause of action.''

It seems clear, therefore, that in neither case was the debt barred by the statute of limitations. Of course, Collums, the intervener, had no better or greater rights than the defendants, and if the debt was not barred as to them, he could not recover. The record shows that in 1926 these two appellees purchased a farm and home from Dr. A. J. Brittian. Frank McKim promised to pay $660 for his, and Vernon McKim promised to pay $602.93. In 1931, the notes were renewed and both parties admit that they still owe for the land, admit they are

in possession of the land, and they ask permission to keep the land, cancel the debt and mortgage on the plea of usury. One of the defendants testified that when they made the notes of which they now complain as being usurious, they took them to their uncle and executed them before him and then returned them to Dr. Brittian. This was in 1931, and not a word was said by either of them, so far as the record shows, about usury or any other defense until after suit to foreclose was brought and after Dr. Brittian was sick, and one of the defendants said "bedfast."

We are of opinion that in each case there was one debt, and that there was no usury in either, and that the debt was not barred by the statute of limitations.

The decree of the chancellor is reversed in each case, and the causes remanded with directions to enter decrees for the amounts claimed in each case by the appellant, and the lands ordered sold to satisfy the decrees.