## JOHNSON v. WALKER, et al.

ANSWER IN CHANCERY. The *answer* in chancery must be *taken as true*, unless the complainant has controverted it by sufficient proof.

RESCINDING CONTRACT. One who asks *to rescind* a *contract* must put, or offer to put, the other party *in statu quo;* or sufficiently excuse himself from such duty.

RIGHTS OF VENDOR. One *who purchases* property with a full knowledge of all the *surroundings*, and of all the *defects* in the title, *can not* afterwards *enjoin* the collection of the purchase money.

CONTRACTS. Where a *third party* steps in and *assumes* the obligations of one of the parties to a *contract* of sale, he is as much *bound* by the *contract* as was the party for whom he is substituted, and the other original party to the contract has the same rights as against the substituted party that he had as against the party with whom he originally contracted.

COSTS OF INJUNCTION. *Upon* the *dissolution* of an *injunction* restraining defendant from collecting notes given for the purchase money on a contract of sale, the court should *assess damages* and *award costs* in favor of the *defendant.*

*Appeal from Crittenden Circuit Court.*

Hon. JAMES M. HANKS, Circuit Judge.

PIKE, GARLAND & NASH, for appellant.

The position assumed in this cause, by our associates, as to the title, under the deed of trust, to the trustee, and the consequent rights and liabilities as to all parties concerned, is well sustained by reason, and by authority. We beg leave to cite *Hill on Trustees*, 51, 274, 316 ; 2 *Hilliard on Mortgages*, 518, 522 ; *Kannady v. McCown*, 18 *Ark.*, 166 ; *Gilchrist v. Patterson, ib.*, 575 ; *Fitzgerald v. Beebe*, 7 *Ark.*, (2 *Eng.*,) 319.

Upon the question touching the consideration of the notes, freeing of the negroes, &c., we beg leave to call the attention of the court to the *opinion* of the Supreme Court of Louisiana in *Wainwright v. Bridges*, herewith presented, and also the argument of Mr. Sage, in the same court, in the case of *Austin v. Sandell*. This question has been well argued already before this court in *Smith, ad., v. Sevier, ad.*, at this term, and nothing more, we presume, is needed here. In this case, the court will bear in mind that it is a proceeding in equity, and the court must dispose of all the rights growing out of or connected with this transaction, and in giving equity to one, he will be required to do equity himself. Then, upon this old and familiar principle of equity, if Hodges conveyed nothing to Johnson, when he sold or pretended to sell him the negroes, he can not get any thing for them ; and this is fully established and recognized by this court in *Steele v. Richardson*, 24 *Ark.*, 366. Indeed, the case of *Steele v. Richardson* is decisive on this very point involved here, and upon it we feel satisfied to rest the case, so far as any recovery is sought for the price of the negroes.

As for the lands agreed to be sold, Hodges must be prepared with his title to give to Johnson, and a good and valid title at that ; nothing less will meet his contract, and the law will not compel Johnson to receive less. By this is meant a deed suffi-

cient in form, and one that carries a title in *fee*. And, until he does this, he has no claim at all against Johnson. 2 *Parsons Con.*, 168; *Rawle on Con. for Title*, 564 *and notes; White v. Folgambe*, 11 *Vesey*, 337; 18 *ib.*, 508; *Warring v. Marknett, Forrest*, 129; *Yeates, et al., v. Prior*, 6 *Eng.*, 60; 22 *Ark.*, 435.

The proof by Hodges of the conveyances, if properly pleaded, was defective; in truth he makes no proof at all, under the rules of practice. *Whiting v. Beebe*, 12 *Ark.*, 427. Unless these papers were records, proving themselves, he should have proved them at the hearing, or by depositions. *Walker v. Peay*, 22 *Ark.*, 103; 2 *Daniel, Ch. Pr.* 1024, *et seq.*

WATKINS & ROSE and B. C. BROWN, for appellees.

A vendee desiring to rescind must aver that he has returned, or offered to return, every thing received under the contract of sale, and must show that the parties can be placed in *statu quo. Davis v. Tarwater*, 15 *Ark.*, 286; *Bellows v. Cheek*, 20 *id.*, 424; *Desha v. Robinson*, 17 *id.*, 228; *Seaborn v. Sutherland, id.*, 603; *Threadgill v. Pintard*, 12 *How.*, 38; 1 *Hilliard on Vendors*, 223, 224, 333, 426, 424; 8 *Paige*, 600; 12 *Barb.*, 641; 10 *Ohio*, 42; *Campbell v. Hopkins*, 15 *Ark.*, 51; *Smith v. Robinson*, 23 *Ala.*, 312.

As Johnson bought with a knowledge of the defects of title, he can not enjoin the collection of the purchase money. *Washington v. Card*, 22 *Ark.*, 277, 285; *Walker v. Towns*, 23 *id.*, 147; 1 *Hill Vend.*, 223; *Hill v. Bush*, 19 *Ark.*, 522; *Yeates v. Pryor*, 11 *Ark.*, 66.

The substitution of Johnson for Walker was a novation of the contract, by which the old debt was discharged. *Bouvier's L. D. Tit. Novation;* 1 *Pars. Con.*, 188; *Burge on Suretyship*, 168, 171, 172, 174. No loss in this case could fall on the trustee. *Cornish v. Dews*, 18 *Ark.*, 172; *Adams' Eq.*, sec. 27; *Chaplin v. Givens, Riley Ch. R.*, 26.

Where time has not been made a part of the contract, if the vendor can make title at the time of the decree, the vendee will

be compelled to accept it. *Hepburn v. Auld,* 5 *Cranch,* 262; *Hepburn v. Douglas,* 1 *Wheat.,* 179; *Hobson v. Bell,* 2 *Beav.,* 17; *Townsend v. Champesdoron,* 3 *Young C.,* 505; 1 *Hill Vend.,* 194, 195, 223; 21 *Barb.,* 381; 5 *Paige,* 241; *3 Cow.,* 445; *Hill on Mort.,* 708; *Clarke v. Bell,* 2 *B. M.,* 1; *Yeates v. Prior,* 11 *Ark.,* 59.

A mistake in the contract which does not affect the real interests of the parties affords no ground for rescission. *Butler v. Miller,* 15 *B. M.,* 617; *Miles v. Williams,* 24 *Tenn.,* 135; 2 *Hill Vend.,* 297; *Beaverly v. Lawson,* 3 *Munf.,* 317; 1 *Hill Vend.,* 317; *Keyton v. Branford,* 5 *Leigh.,* 59; *Long v. Israel,* 9 *id.,* 556.

A mistake which the other party is willing to rectify is no ground for rescission. *Beck v. Simmons,* 7 *Ala.,* 71.

Damages should have been awarded on the dissolution of the injunction. *Blakeney v. Ferguson,* 18 *Ark.,* 354; 2 *J. J. M.,* 443, 369; 3 *Dan. Chy.,* 1845, *n.* 2.

The injunction should have never been granted. 5 *How.,* (*Miss.,*) 542; 5 *Leigh.,* 606; 2 *Dana,* 276; 5 *Munf.,* 295; 7 *How.,* (*Miss.,*) 167; 1 *Dana,* 385; 5 *Ala.,* 604; 1 *Ham.,* 449.

Costs in chancery should generally be decreed to the prevailing party. 3 *Dan. Chy.,* 1520, 1546; 3 *S. C. R.,* 61.

GREGG, J.

This suit is by a bill brought by the complainant against the defendants, on the chancery side of the Crittenden circuit court, to rescind a contract, by complainant made with defendant, Walker, for the purchase of certain lands, negro slaves, farming implements, crop, stock, &c., amounting in the aggregate to $83,000, and for a return of part payment of the purchase money paid to Walker and Hodges, and for a cancellation of a deed of trust made by complainant to Swepston.

The bill alleges that through the solicitation, urgent persuasion and influence of defendant Hodges, the complainant, on the 18th day of March, 1863, purchased of the defendant Walker, twenty-eight negro slaves, estimated at $28,000, and section 16,

and half of section 15, in township 7, north of range 8 east, and the growing crop, stock, farming implements, &c., then on the land ; that of the purchase price, he paid $17,500 down to Walker; that Walker had previously purchased the same property from defendant Hodges, and, by agreement between all the parties, complainant was to pay H. a balance due from Walker to him amounting to $68,199$\frac{77}{100}$, and for which Hodges held Walker's notes, which were to be surrendered up to Walker, and accordingly complainant executed to Hodges his obligation to pay Walker seven promissory notes, amounting, in the aggregate, to the sum aforesaid, and H. alleging that said notes were not present to be at once surrendered, executed to Walker an acquittance or receipt against them, and complainant executed a deed of trust upon all the property so purchased to defendant Swepston, as trustee, to secure the payment to Hodges of the amount of said notes. Complainant alleges a payment to Hodges of the two notes first due—the one for $8,328$\frac{50}{100}$, the other for $8,800—and that he failed to meet the third installment when it fell due, and he alleges as an excuse therefor that he had discovered large incumbrances and liens upon section 16, and that neither Walker or Hodges ever had title to one-half of the lands sold him in section 15 ; that Hodges was a lawyer of eminent ability ; that he was an old acquaintance of complainant's, and had great influence over him, and that he, Hodges, willfully and fraudulently persuaded and induced complainant to make the trade with Walker—that he, complainant, might be substituted debtor in the place of Walker, and thereby make the debt more secure to the defendant Hodges, &c. Complainant also alleges that one Trezevant had a lien upon section 16 for about $10,000, which defendant Hodges had promised to extinguish, but had not done so, and that large sums for purchase money on said lands were due from Hopkins to Trezevant, and from Scruggs to Hopkins, and from Arnold to Scruggs, parties through whom the title had passed, as well as a large sum from Hodges to Arnold, and that the same is an incumbrance on

the title. He alleges that the misrepresentations of Hodges and Walker were fraudulent, and he asks that the contract be rescinded, the deed of trust canceled, and that the parties be restrained and enjoined from collecting the amount of the outstanding notes, and that he may have a return of the part consideration paid.

The complainant makes no offer to return any part of the property by him received, or to account for such as may have been converted or lost, only by averring that the slaves were freed; nor does he propose to set off the payments against the property, the title of which is not questioned, or to make any other equitable adjustment in reference to that part of the contract.

Hodges filed his answer and cross-bill. He admits the purchase, by the complainant, of Walker, of all the property alleged in the bill, except the east half of the west half of section 15 in township 7, n. r. 8 east, and avers that there was a clerical error in the title bond, describing the lands in section 15 as the west half of that section, instead of the w. $\frac{1}{2}$ of the w. $\frac{1}{2}$ of section 15, &c., and alleges that the understanding, intention and agreement of all the parties was to include in the sale and purchase 800 acres only, and that that was composed of section 16 and the w. $\frac{1}{2}$ of the w. $\frac{1}{2}$ of section 15; that he drew up the title papers at the instance of the parties, and made that mistake in the description.

Hodges denies using persuasion or undue influence over the complainant to affect the trade, and avers that what he did was done at the instance of the complainant; that he agreed to accept complainant as his debtor, and to release Walker. He admits the payment of $17,500 in Confederate money, by the complainant to Walker, and that complainant paid off two of the notes—one for $8,325$\frac{50}{100}$ and the other for $8,800—the first in Confederate money at its nominal value, and that the other was paid, $500 in U. S. currency, and $8,300 in $17,000 of Confederate currency, which currency was then worth only 12 cents on the dollar.

Hodges admits the appointment of defendant Swepston as trustee—the conveyance to him, &c., as alleged in the bill.

Swepston filed his answer, in which he, from information and belief, adopts the answer of defendant Hodges.

Walker also answered, admitting all the main facts alleged in the bill, only the description of the lands; in that he alleges, as did his co-defendant Hodges, that but 800 acres were sold; that no more were offered or represented, and that the complainant well knew the fact, and that the lands sold were the w. ½ of the w. ½ of section 15 and section 16, all in t. 7, r. 8, and the misdescription in title bond was the oversight or willful misconduct of his co-defendant Hodges. He denies all fraud or misrepresentation, and charges that his co-defendant Hodges was the active man in the trading, and that the complainant was to take the debt off of his hands; that he was to receive $17,500, and then step out and let the complainant step into his shoes.

Upon the presentation of the bill to the Chancellor, in the court below, an injunction was issued against defendants restraining the collection of the notes, &c. Various motions and orders were made during the progress of the cause not material in its final determination.

Various depositions were taken—the bearing of which seemed most calculated to affect a motion to dissolve the injunction pending the suit, and do not contradict any of the most material features in the answers or cross-bill, only so far as defendant Hodges charged complainant with intent and preparation to remove, &c., and with the use and conversion of some of the personal property; consequently, the main issues are left to be determined from the bill, cross-bill and answers.

The bill charges Hodges with superior knowledge of the titles; with a fraudulent concealment of facts; fraudulent misrepresentations and undue influence over complainant, and especially so in reference to the description of the lands and pending liens upon the lands. To all of which charges Hodges put in an emphatic denial, and avers he

acted in the premises at the instance of the complainant, and fully communicated to him all the material facts he possessed in reference to the property ; denies that there were any liens upon the lands, only such as were made known to the complainant at the time of his purchase, and avers that he has satisfied the demands and removed all liens that did exist, and exhibits receipts and title papers; to the authenticity and genuineness of which, the complainant, so far as appears of record, at the hearing, took no exception. He avers that the title bond did not correctly describe the lands in section fifteen, but by a clerical oversight, the same was misdescribed, as above stated; and in his cross-bill calls upon the complainant to answer and say if it was not the understanding and agreement that complainant in the purchase was to have only 800 acres, and that of section 16 and the west half of the west half of section 15; to which complainant replies he purchased but 800 acres, but denies knowing the amount in either section, or whether the surveys were full or fractional divisions. Not only by the answers and other papers in the cause does it appear that there was a misdescription, but the deposition of the only witness of the complainant, who testified as to knowledge, showed the same facts very clearly.

Then, so far as the main facts of the whole transaction are developed, the answers of the defendants, wherein they state facts contradicting the allegations in the bill, according to the well established rules of court, must be taken as true, unless the complainant had contradicted such answers by sufficient proof, and that he has wholly failed to do.

This being the state of the pleadings and evidence, was the complainant entitled to the relief sought ? We think not. The whole drift of his bill is an attempt to make Hodges assume the responsibility of the loss of the slaves and accept a return of the lands, and that, without saying any thing of the other property that he sold to defendant Walker in 1862. The legality and correctness of which transaction is not complained of by Walker, nor is its fairness or legitimacy questioned by

the complainant, further than his allegations charging incumbrances of the title might be said to affect Hodges, and that, if an object, is removed by Hodges' showing of title.

Our court has, on more than one occasion, declared that he who would ask to rescind a contract and a return of a consideration, or part consideration paid, must offer to return all he has received, or sufficiently excuse himself from such duty. In the case of *Seaborn v. Sutherland*, 17 *Ark.*, 606, the court said: "If a purchaser wishes to rescind a contract of sale he must put the vendor, or offer to put him, in the same situation he was in before the delivery of the property. See *Bellows v. Cheek*, 20 *Ark.*, 424; *Davis v. Tarwater*, 15 *Ark.*, 286, 290 and 293; also, *Treadgill v. Pintard*, 12 *Howard*, (*U. S.*,) 38; 23 *Ala. R.*, 312; *Moore, et al. v. Smedburgh*, 8 *Paige*, 600. In this bill there is no offer to return or account for a large amount of personal property.

The complainant places much stress upon the allegation that the negroes were freed before his purchase. It is certainly not necessary to pass upon the question as to when slaves in Arkansas became free, in order to come to a correct conclusion in this cause. If there was a want of title at the date of Johnson's purchase, it resulted from certain transactions and acts, with which, as appears by the record in the cause, complainant was as familiar and well advised as the defendants, and it seems to be well settled that one who purchases property with a full knowledge of all of the surroundings, "with his own eyes," or with a knowledge of the defects in the title, can not afterwards enjoin the collection of the purchase money. *Worthington v. Card*, 22 *Ark.*, 285; *Walker, et al., v. Towns Exrs.*, 23 *Ark.*, 147; *Hill v. Bush*, 19 *Ark.*, 528, and 11 *Ark.*, 66.

All the facts in this case show nothing in the transaction between Hodges and Walker making Hodges liable for any fraud, failure of title or false warranty, and it seems to us Johnson can occupy no more favorable ground than defendant Walker would have done had he seen fit to complain. In this transaction Johnson came forward and substituted himself in

the shoes of Walker. If the former contract between Hodges and Walker was valid, and the existing obligations between them binding, we can not see wherein they could be less obligatory by another assuming to fulfill. Walker's part of the agreement, and we know no rules of equity that would require Hodges to lose the value of the property legally owned and fairly sold by him to Walker, if the title did afterwards fail without fault on his part, whether in the hands of Walker or Johnson.

We can not but hold between the three this was a revocation of the contract, so far as it had not already been carried into effect between Hodges and Walker, and Johnson adopted and confirmed the purchase of Walker, and he is bound thereby. See 1 *Parsons on Con.*, 188 and 191, and *Burge on Suretyship*, 168, 272, 273 and 274.

The question of the warranty made by Walker to Johnson has been settled by this court in the cases of *Dorris v. Grace*, 24 *Ark.*, 326, and *Milwee, ex parte, ib.*, 364, and *Haskill, admr., v. Sevier, et. al.*, decided December term, '67, of this court.

In the view we have taken, it is not necessary to pass upon the validity or worth of the Confederate notes passed between the parties, as none of them complain of this part of the transaction.

The only complaint made by Hodges is that the court refused to assess damages in his favor upon the dissolution of the injunction, and for this alleged error he appealed, and here assigns that, and the failure to decree costs to him, as error. *Sec.* 19 *of chap.* 88, *Gould's Digest*, provides that upon the dissolution of an injunction, in whole or in part, if money has been enjoined, the court shall assess the damages at not less than six nor more than ten per cent., and in other cases damages shall be assessed by a jury. See *Blakeney v. Ferguson*, 18 *Ark.*, 354, and other reported cases of this court.

The court below erred in not assessing damages in Hodges' favor upon the dissolution of the injunction and upon the amount of the two notes, the collection of which had been restrained, and also in not rendering a decree for costs, and so much of the decree as relates thereto is reversed.

The damages of the said defendant Hodges, sustained by the injunction are assessed by this court at one thousand two hundred and five dollars and forty cents, and costs are awarded against said complainant.

It is by this court decreed that the complainant, Madison J. Johnson, pay to the defendant, Asa Hodges, twelve hundred and five dollars and forty cents, and to all the defendants herein all their costs in this court and in the court below expended, and that the decree in this cause in the Crittenden county circuit court in chancery, be, and the same is, in all other things affirmed, and ordered to be carried into effect.