BAUER *v.* WADE (TWO CASES).

## Opinion delivered April 19, 1926.

1. USURY—INTENT OF LENDER.—Under Const. art. 19, § 13, providing that all contracts for a greater rate of interest than 10 per cent. per annum shall be void as to principal and interest, and that the General Assembly shall prohibit the same by law, *held* that a mutual agreement to give and to receive unlawful interest is not necessary to constitute usury, but there must have been an intention on the part of the lender to take or receive more than the legal rate of interest.

2. USURY—BURDEN OF PROOF.—The burden of proof is upon the party pleading usury to establish it.

3. USURY—SUFFICIENCY OF EVIDENCE.—A finding of the chancellor that a certain transaction was free from usury *held* sustained by the evidence.

4. MORTGAGES—FORECLOSURE SALE—INADEQUACY OF CONSIDERATION.— While a foreclosure sale will not be set aside for inadequacy of consideration merely, equity will seize upon any other ground which tends to show unfairness in the conduct of the sale, or that the defendant in the case or other parties were prevented by unavoidable casualty from attending the sale.

5. MORTGAGES—CONFIRMATION OF SALE FOR INADEQUATE PRICE.—The defendant in a foreclosure suit executed a supersedeas bond which he was advised would stop a sale of the property, and he so informed persons who might have purchased at the sale; without his knowledge the bond was not accepted, and the property was purchased by plaintiff for one-fourth of its value. *Held* that the court erred in confirming the sale.

Appeal from Benton Chancery Court; *Sam Williams,* Chancellor; reversed as to case No. 9373; affirmed as to case No. 8990.

STATEMENT BY THE COURT.

These two cases were heard and determined separately in the chancery court, but have been briefed together on appeal.

The appeal in the first case involves the correctness of a decree foreclosing a mortgage on real estate and denying the defendant's plea of usury.

The appeal in the second case involves the correctness of a decree of the chancery court refusing to set

aside the sale in the foreclosure proceedings on account of gross inadequacy of price coupled with unavoidable casualty.

H. K. Wade and Katie Wade, his wife, brought suit in equity against Gottlieb Bauer and Catherine Bauer, his wife, to foreclose a mortgage on real estate. The defendants pleaded usury as a defense to the action.

On the 5th day of March, 1923, Gottlieb Bauer and Catherine Bauer, his wife, executed a mortgage on 640 acres of land in Benton County, Arkansas, to H. K. and Katie Wade, to secure an indebtedness of $5,500, evidenced by note of even date, and due six months after date, with interest at the rate of 10 per cent. per annum from date until paid. The mortgage was duly acknowledged on the 8th day of March, 1923, before a notary public, and was filed for record on the 16th day of March, 1923. A mortgage was also executed on certain personal property to secure said indebtedness.

The defendants, in order to sustain their plea of usury, first called as a witness H. K. Wade, one of the plaintiffs in the suit. He was asked if, at the time the promissory note and the two mortgages sued on were executed, there was any other contract in writing between the parties, and answered, "No." He was then asked what other deeds or conveyances were executed by the defendants to him, and replied, "None, except the mortgage." He was then asked if a deed to 40 acres of land had not been executed to him by Bauer, and answered, "No." The witness stated further that the first time he ever heard of the deed to the 40 acres of land to himself was when he was asked on the witness stand if Bauer had not executed such a deed to him.

Gottlieb Bauer was the principal witness for the defendants. He admitted that he executed the mortgage on the lands described in the complaint, and stated that he lived on the 140 acres adjoining these lands. Mr. C. A. Owenby had a mortgage on the 640 acres of land in question to secure an indebtedness of four thousand three hundred and twenty-odd dollars. The mortgage indebt-

edness became due, and the mortgagee had been threatening to foreclose it. Bauer went to Wade two or three times, and talked to him about borrowing the money with which to pay off the mortgage to Owenby. Bauer told Wade that he had a contemplated purchaser for the lands, but he did not want to sell them if he could avoid it. He wanted to borrow enough money to discharge the mortgage indebtedness to Owenby in order to give him time to dispose of the lands to a better advantage. Wade agreed to let him have $4,500 with which to pay off the Owenby mortgage, but required him to sign a note for $5,500 and to deed him 40 acres of land in order to get the $4,500. He executed a note for $5,500 payable to H. K. and Katie Wade, bearing interest at ten per cent. per annum from date until paid. The additional thousand dollars was a bonus to Wade in order to induce him to lend the witness $4,500. Earl Blansett, the attorney of the witness, prepared the deed to the 40 acres of land which was conveyed by Bauer to Wade. Wade agreed that, if Bauer should pay him $5,500, he would reconvey to him the 40 acres of land. A contract to this effect in writing was executed by the parties and left with Mr. Blansett. The witness does not know what has become of this contract. The 640 acres of land were timber lands situated about four and a half miles from the town of Lowell and an equal distance from Springdale, which is on a railroad. Wade lived at Fayetteville, and sent the mortgage to Bauer to be executed. Bauer turned over the papers to his attorney for examination. Blansett asked the witness if he had bought any land from Wade, and told him that there was a deed from Wade to Bauer to 40 acres of land, but did not tell the witness where the land was situated. The witness never examined the land and never accepted the deed from Wade to the 40 acres of land in Washington County, Arkansas. He executed the mortgage to Wade, and then got the $4,500, which Wade had deposited to his credit in the bank, and used all of it, except $178, in paying off the Owenby mortgage, and checked out the $178 for his own benefit.

Earl Blansett was also a witness for the defendants. According to his testimony, he went with Bauer to Fayetteville to arrange with Wade about borrowing the $4,500. The agreement was entered into verbally between the parties, and Wade was to have the mortgage drawn up by his own attorney and sent to Bauer for execution. Nothing was said about the purchase of any land. The first information the witness had that Bauer was to receive a deed from Wade to 40 acres of land was when Bauer brought it to his office at the time he brought the mortgage for examination. Bauer had executed a deed to 40 acres of land and acknowledged it in the office of the witness, and then sent the deed to Mr. Wade at Fayetteville. The witness had prepared a written contract to be signed by Wade and Bauer, but the contract is now lost. It bore the signature of H. K. Wade, and the substance of the contract was that H. K. Wade would deed back to Bauer a certain 40 acres of land that Bauer had deeded to Wade upon the condition that Bauer would pay $5,500 to Wade.

Other witnesses were introduced by the defendants, who testified that the 40 acres of land in Washington County were situated in a canyon, and were not worth more than $50. It had on it a fairly good one-room log house, a small smokehouse, and a small barn. Another witness testified that he had sold the land for $100.

H. K. Wade became a witness for the defendants. According to his testimony, he had been cashier of the McIlroy Banking Company at Fayetteville, Arkansas, for thirty years. Bauer came to him and wanted to borrow $4,500 to pay off a mortgage on 640 acres of timber lands owned by him in Benton County. He got to talking about land deals, and Wade told Bauer that he had 40 acres of timber land that he had never seen which he would like to sell to him. Bauer said that he would buy the land, provided that he could get a loan on his own lands to take care of the purchase price. Wade proposed to sell the 40 acres to Bauer for $1,000 and lend him enough on the 640 acres to take care of the two debts.

Wade had not seen the 40 acres in controversy, and did not know what it was worth. He had bought it at a foreclosure proceeding. Wade did not charge Bauer a bonus of $1,000 for making the loan and did not require him to purchase the 40 acres of land before he would lend him the $4,500. He never saw any deed from Bauer to himself for 40 acres of land, and did not execute a contract with Bauer to deed him back 40 acres of land when he should pay off the mortgage indebtedness of $5,500. Bauer told Wade at the time he was seeking to arrange for the loan that he was going to sell his 640 acres of land in 40 and 80-acre tracts.

The chancellor found that the deed executed by Wade to Bauer to 40 acres of land in Washington County in consideration of a thousand dollars had never been legally received nor accepted by Bauer, and it was decreed that it should be canceled and the title to the same vested in the plaintiffs. On this point the court found further that $1,000 should be deducted from the mortgage indebtedness on account of the cancellation of this deed.

The court further found that the defendants understood that they were to convey to the plaintiffs a deed to 40 acres of land in Benton County, and that they afterwards executed a deed to it to the plaintiffs, together with a written contract providing for the redemption of the said lands upon the payment of a thousand dollars.

The court further found that said deed had been lost, and had never been delivered to the plaintiffs or accepted by them, and that no contract had been entered into by the parties with regard to this 40 acres of land. In this connection, it may be stated that this 40 acres was included in the lands embraced in the mortgage.

It was decreed that the mortgage should be foreclosed for the payment of the $4,500 and the accrued interest.

An appeal to this court was taken by the defendants from this decree within six months after its rendition.

In the second case the record shows that there was a sale according to the provisions of the foreclosure

decree, and that H. K. Wade bid in the lands for $2,500, which was only one-fourth of their market value. Other facts relating to this case will be stated under an appropriate heading in the opinion.

The chancery court refused to set aside the bid of H. K. Wade at the foreclosure sale, and confirmed the sale made to him. To reverse that decree the defendants have also prosecuted an appeal to this court.

*John W. Nance* and *Earl C. Blansett,* for appellants.

*John Mayes* and *W. N. Ivie,* for appellees.

HART, J., (after stating the facts). Article 19, § 13, of our Constitution provides that all contracts for a greater rate of interest than 10 per cent. per annum shall be void as to principal and interest, and that the General Assembly shall prohibit the same by law. In construing this section of the Constitution and the statutes passed pursuant to its directions, it had been held that a mutual agreement to give and receive unlawful interest is not necessary to constitute usury, but that there must have been an intention on the part of the lender to take or receive more than the legal rate of interest. *Garvin* v. *Linton,* 62 Ark. 370, and *Jones* v. *Phillippe,* 135 Ark. 578.

In this connection it may be also stated that, under this case and other cases decided by this court, the burden of proof is upon the party pleading usury to establish it. *Briant* v. *CarlLee Brothers,* 158 Ark. 62, and *Hollan* v. *American Bank of Commerce & Trust Co.,* 159 Ark. 141.

In the case at bar, we have a specific finding of the chancellor in favor of the plaintiffs on the question of usury, and, after due consideration of the whole matter, we are of the opinion that it cannot be said that a clear preponderance of the evidence is against his finding on this question.

In the first place, counsel for the defendants seek to sustain their plea of usury on the facts established with regard to the conveyance of the 40 acres of land in Washington County by Wade to Bauer. The preponderance

of the evidence shows that this land was of but little value, and it is insisted that the fact that Wade conveyed it to Bauer in consideration of a thousand dollars shows that it was intended as a cover for usury. On this point, Wade testified that all the lands embraced in the mortgage were timber lands, and that, when Bauer applied for the loan, he told him that he had a 40-acre tract he had never seen which he would sell him for a thousand dollars, and that there was no intention whatever to use this as a cloak for usury. In other words, according to his testimony, it was a *bona fide* sale of the 40-acre tract of Bauer for one thousand dollars.

On the other hand, Bauer testified that, at the time the arrangement was made for him to borrow the money, nothing whatever was said about Wade deeding him 40 acres of land for a thousand dollars. According to his testimony, the additional thousand was put in the mortgage on an entirely different ground, which will be separately discussed in this opinion.

Bauer further states that, when his attorney explained the deed to the 40 acres of land in Washington County to him, he refused to accept it on the ground that it was not in the contemplation of the parties when the agreement for the loan was made and was no part of that transaction. If his version be accepted as true, there was no usury on this account, because the deed from Wade to him to the 40 acres in Washington County did not enter into their original transaction at all, and anything done by Wade subsequently which was not a part of the original transaction could not now be used by the defendants as a predicate for usury.

According to the testimony of Bauer, he based his defense of usury entirely upon the fact that Wade required him to convey to him 40 acres of land in Benton County as a bonus before he would make the loan. As a part of the same transaction, Wade agreed to reconvey this 40 acres to Bauer when he should pay off the mortgage indebtedness of $4,500 and the thousand dollars additional which were to be considered as a bonus for

making the loan. According to the testimony of Bauer, he executed a deed to Wade to this 40 acres of land, and at the same time signed the contract, and that he delivered the deed and the contract to his attorney to be sent to Wade. In this respect he is corroborated by the attorney, who says that the contract has been lost, and that after diligent search he has been unable to find it.

On this point, Wade denied that he ever executed any such contract or that he ever received a deed to 40 acres of land from Bauer. In this connection, it may be stated that the 40 acres of land to which it was claimed that he was to receive a deed was a part of the 640 acres embraced in the mortgage.

The chancellor made a specific finding in favor of the plaintiffs on this phase of the case, and it cannot be said that his finding is not sustained by the evidence. As we have already seen, the burden of proof was upon the defendants to establish their plea of usury by a clear preponderance of the evidence, and the chancellor did not err in holding that they had not fairly met the burden of proof in this respect.

The chancellor did allow a credit of $1,000 on the mortgage indebtedness; but this was upon the ground that the minds of the parties never met upon the trade for the 40 acres of land in Washington County. As we have already seen, Wade testified that this was a separate transaction from the mortgage, and that the thousand dollars which was to be the purchase price of the land was embraced in the mortgage as additional security. On this point the defendants denied that any such trade had been made, and, the court being of the opinion that, the minds of the parties having never met, the contract in this respect should be annulled and set aside. Hence it was decreed that the title to the 40 acres of land in Washington County should be quieted in the plaintiffs, and that the defendants should receive a credit on the mortgage indebtedness for a thousand dollars. According to the testimony of Wade, the sale by him of the Washington County land to Bauer was separate and apart from the

loan of the $4,500, and it was embraced in the mortgage merely so that he might have additional security for the payment of the $1,000. On the other hand, according to the testimony of Bauer, there was no trade whatever for the Washington County land. Hence the court did not err in eliminating it entirely from the foreclosure proceedings. This left the foreclosure decree for $4,500 and the accrued interest, which was the amount of money actually received by the defendants from the plaintiffs.

It follows that the decree in the foreclosure proceeding should be affirmed.

We now come to a consideration of the decree refusing to set aside the bid of H. K. Wade for the lands embraced in the mortgage at the foreclosure sale. The record shows that he became the purchaser of the lands for $2,500, and that they were worth at least $9,000. Some of the witnesses placed the value of the lands at $10,000 and upwards. In addition to this, the defendant had executed a supersedeas bond, as he understood it, in the foreclosure suit for the purpose of preventing a sale of the land under the foreclosure decree. He was informed by his attorney that this would stop the sale under the foreclosure decree, and so informed the people in his part of the county who might be prospective purchasers at the sale. On this account the prospective bidders for the property did not attend the sale, and the defendant Bauer himself failed to attend it. The bond was not accepted, but Bauer did not know of this fact until after the property had been stricken off to Wade.

Under this state of the record we are of the opinion that the court should have rejected the bid of Wade and have resold the lands under the foreclosure decree. While this court is committed to the rule that a judicial sale will not be set aside for inadequacy of consideration merely, still a court of equity will seize upon any other ground which tends to show unfairness in the conduct of the sale, or that the defendant in the case or other parties were prevented by unavoidable casualty from attending the sale, in connection with inadequacy of con-

sideration, to set aside the sale. *Stevenson* v. *Gault,*. 131 Ark. 397; *Moore* v. *McJudkins,* 136 Ark. 292; and *Chapin* v. *Quisenberry,* 138 Ark. 68.

In the case at bar, H. K. Wade, one of the plaintiffs, purchased the property, and, while he was not guilty of fraud in connection with the purchase, he did purchase it at a grossly inadequate price. This fact, together with the other circumstances, was sufficient to have caused the court to set aside the sale and order the property resold. The defendants executed a bond in good faith, which they were informed would stop the sale. Bauer told his neighbors and prospective purchasers of the lands that the sale would not take place, and was not informed that the bond had not been accepted until after the sale was made. He was guilty of no negligence in the premises. The sale was not complete until it was confirmed by the chancery court.

For the error in confirming the sale to H. K. Wade the decree will be reversed, and the cause remanded with directions to reject his bid and to order a resale of the property according to the terms of the foreclosure decree, and for such other proceedings as may be necessary and not inconsistent with this opinion; and the foreclosure decree will be affirmed.

HUMPHREYS, J., not participating.