UNIVERSAL CIT CREDIT CORP. *v.* HUDGENS.

5-2603                                              356 S. W. 2d 658

Opinion on rehearing delivered April 30, 1962.

GEORGE ROSE SMITH, J., on rehearing. This was originally an action in replevin. The appellant's complaint alleged the car to be worth $1,000. At the inception of the case the appellant obtained possession of the vehicle by executing a delivery bond.

The case was later transferred to equity. In the final decree the chancellor canceled the contract for fraud and for usury and gave the appellees a judgment for $1,060, representing the value of the car and $60 damages for the wrongful repossession. We affirmed the decree upon the ground of fraud alone, without reaching the question of usury. 234 Ark. 668.

In a petition for rehearing the appellant correctly points out that the judgment is excessive if the sole issue is that of fraud. One who obtains rescission of a contract for fraud must return what he has received, the parties

being placed in status quo. *Johnson* v. *Walker,* 25 Ark. 196; *Kilgo* v. *Continental Cas. Co.,* 140 Ark. 336, 218 S. W. 171. Hence if the case is merely one of fraud the repossession of the car was not wrongful, for the purchasers were required to surrender it and could recover only their down payment of $245, with interest.

On the other hand, when a contract of sale is set aside for usury the purchaser is entitled to keep the property. *Universal C. I. T. Credit Corp.* v. *Stanley,* 225 Ark. 96, 279 S. W. 2d 556. If this contract was usurious the chancellor was right in awarding the appellees a judgment for the value of the car. It thus becomes necessary for us to pass upon the issue of usury, to fix the measure of damages.

The facts, as found by the chancellor, show that the seller represented the price of the car to be $1,095. The salesman induced the appellees to sign the contract in blank and later fraudulently filled in the price as being $1,395, an excessive charge of $300. The contract recites an interest charge of $133.42, which is within the legal limit of 10 per cent per annum if the price was really $1,395. If, however, the excessive charge of $300 is treated as interest the agreement is plainly usurious.

It is shown without dispute that before the seller would agree to the transaction he telephoned the appellant finance company for an investigation of the purchasers' credit, to be certain that the conditional sales contract could be transferred. The appellees' credit was found to be good. On the day after the sale the dealer assigned the contract to the appellant. The recited unpaid principal balance was $1,150, which the finance company paid by issuing a check for $943 and by setting up a reserve of $207 which was to be paid to the dealer when all the monthly installments had been met by the purchasers. (Whether the practice of setting up such a reserve might involve usury as between the finance company and the dealer is not before us, for the dealer has not complained. The only issue here is whether the original transaction between the seller and the buyers was usurious.)

Did the excessive charge of $300 amount either to usury in itself or to a scheme resorted to as a cloak for usury?

Where a lender induces the borrower to sign a note in blank and later fills in the principal in a sum greater than the amount actually lent it has been held (correctly, we think) that these facts support a finding of usury. *Cortner* v. *Bennett,* 230 Miss. 369, 92 So. 2d 559; *Auto-credit of Fort Worth* v. *Pritchett,* Tex. Civ. App., 223 S. W. 2d 951; contra, *Chambers* v. *Gilbert,* 68 Minn. 183, 70 N. W. 1077.

Yet not every instance of fraud or trickery in connection with a loan or credit sale can properly be classified as usury. If a lender should knowingly give the borrower counterfeit money the transaction would be fraudulent and criminal, but it would obviously not be usurious, any more than the purchase of goods with counterfeit money constitutes usury. Again, if a thief should sell stolen property on credit the transaction would be subject to rescission, but not for usury.

To determine on which side of the line this case falls we must understand what is and what is not usury. "The excess over the legal rate charged to a borrower for the use of money" is said to be usury. Bouvier's Law Dictionary (8th Ed.). An almost identical definition is given in Webster's Third International Dictionary.

The many definitions in our own cases are substantially to the same effect. "Usury is a corrupt agreement for more than the legal rate of interest on a loan of money, or for the forbearance of a debt." *Ford* v. *Hancock,* 36 Ark. 248. "It is essential, in order to establish the plea of usury, that there was a loan or forbearance of money, and that for such forbearance there was an intent or agreement to take unlawful interest, and that such unlawful interest was actually taken or reserved. The wrongful act of usury will never be imputed to the parties, and it will not be inferred when the opposite conclusion can be reasonably and fairly reached." *Briggs* v. *Steele,* 91 Ark. 458, 121 S. W. 754. A mutual agreement

for unlawful interest is not necessary to constitute usury, but "there must have been an intention on the part of the lender to take or receive more than the legal rate of interest." *Bauer* v. *Wade,* 170 Ark. 1020, 282 S. W. 359. " 'Forbearance' . . . simply means that the person to whom the money is owed waits for all or part of the money after the consummation of the contract in which the money is involved." *Sloan* v. *Sears, Roebuck & Co.,* 228 Ark. 464, 308 S. W. 2d 802.

It will be seen that the fundamental characteristic of usury is the exaction of an excessive charge for the loan or forbearance of money. In the case at bar if the dealer had intended to keep the contract himself and had inserted an increased principal amount as a device for obtaining a greater return as compensation for his extension of credit then a finding of usury might well be justified.

The actual case, however, is quite different. Here the seller could not have intended to make a charge for his forbearance of the unpaid purchase price, simply because he never meant to forbear—that is, as we said in the *Sloan* case, to wait for his money. This dealer would not even enter into the sale until he had first made sure that he could immediately transfer the contract to the finance company. That the seller's conduct amounted to fraud we have no doubt, but there is lacking the essential characteristic that is the earmark of usury.

It was the finance company that exercised the forbearance, but it did not receive an extra $300 for doing so. Instead, it paid the dealer in full for the recited principal of the debt and was to receive no more than legal interest upon its investment. In this respect the case is to be distinguished from *Hare* v. *General Contract Purchase Corp.,* 220 Ark. 601, 249 S. W. 2d 973, and other recent cases in which we have found contracts of sale to be usurious. Here there is no indication that the appellant was aware of the dealer's excessive charge or acted collusively in the transaction. And it is plain enough that this dealer's method of operation, unlike the various cloaks for usury, could not be repeatedly used as a means

of victimizing the public. The salient factor in this transaction was the seller's dishonesty rather than his attempt to take advantage of the buyers' need for credit. No dealer could long remain in business if he habitually defrauded his customers and subjected the finance company to many suits like this one.

In making a finding of usury the chancellor took the position that the recited interest charge of $133.42, although amounting to less than the legal rate upon the recited balance of $1,150, was usurious because it would have been an illegal charge upon a balance of $850, which was the sum orally agreed upon by the parties. This position is not sound. Neither the dealer nor the finance company ever had any intention of charging $133.42 upon a principal balance of $850, nor did the purchasers ever have any intention of making such a payment. The fraudulent contract must stand or fall in its entirety. We cannot make a new agreement for the parties by giving effect to the recited interest figure, which is favorable to the appellees' contention, and at the same time rejecting the recited principal figure, which is unfavorable to them.

What we have here is really a routine case of fraud, for which the principles of equity provide an adequate remedy. Our constitution, Art. 19, § 13, imposes a severe penalty for usury; but we are not at liberty to amend the constitution, in effect, by extending its language to reach a transaction that does not fall within the letter or the spirit of any definition of usury that we have been able to find in any authority in any jurisdiction. Had this contract been usurious in the beginning the appellant would have taken it subject to that infirmity. *Clem* v. *Nelson*, 230 Ark. 296, 322 S. W. 2d 448. But the contract, while fraudulent, was never usurious, because no excessive charge was made for the loan or forbearance of money.

The petition for rehearing is granted. The decree is reversed and the cause remanded for the entry of a decree rescinding the contract for fraud.

WARD, J., concurs.

McFADDIN, ROBINSON, and JOHNSON, JJ., dissent.

ED. F. McFADDIN, Associate Justice, dissenting. The Chancery Court held that the contract was tainted with both fraud and usury. In the opinion of February 19, 1962, the Majority rested its affirmance on the sole ground of fraud. My concurrence to that opinion stated:

"My study of this case convinced me that the transaction was clearly usurious, and I rest my affirmance on that ground. As to the fraud matter, I express no opinion."

On rehearing, the Universal C. I. T. insisted that since the contract was set aside on the sole ground of fraud, then this Court should eliminate the strict rules that govern in usury cases; and the opinion on rehearing agrees with the petition for rehearing. Thus, the Majority is now definitely holding that the transaction was not tainted with usury; and from such holding against usury I vigorously dissent because I am still of the opinion that the Chancellor[1] was correct in his finding that usury was established.

I submit that the facts surrounding the original transaction established usury. On May 21, 1959, Mr. Hudgens and his daughter drove their 1951 Dodge car to the "West Memphis Auto Sales" and traded it for a 1955 Ford, which was priced at $1,095.00. The Hudgens were allowed $245.00 for their Dodge, leaving a balance

---

[1] In his opinion, the Chancellor said concerning the usury:
"The Chancellor finds that though there is a conflict in the testimony the preponderance of the evidence is to the effect that the execution of the Conditional Sales Contract in blank by the defendants was obtained by false representation by the agents and employees of West Memphis Auto Sales and that the agreed purchase price of the automobile was $1,095.00 rather than the sum of $1,395.00 as reflected by the sales contract. Therefore, the finance charge shown by the contract of $133.42 exceeded 10% interest on the amount which should have been shown in the sales contract, and was therefore usurious. In the recent case of *Foster* v. *Universal C.I.T. Credit Corporation*, 231 Ark. 230, 330 S.W. 2d 288, opinion delivered Nov. 16, 1959, wherein the Supreme Court found that though a contract was not usurious on its face the seeds of usury had been sown in the contract and became usurious upon the occurrence of a contingency which made the sales contract usurious. In this instance the inclusion of an amount greater than the purchase price agreed upon resulting in a greater rate of Interest than 10% on the balance due would have been such a contingency as would make the transaction usurious and therefore void."

due by them of $850.00. To this balance there was to be added the cost of insurance and the interest charges; and the payments were to be "about $50.00 per month." That the above was the original transaction is thoroughly established and must be conceded by the Majority, because if this had not been the original transaction there could have been neither fraud nor usury. Mr. Harris, who represented the West Memphis Auto Sales, told the Hudgens that ther was no one at the place of business that afternoon (May 21st) to type up the contract; and so the Hudgens signed the contract in blank, leaving it to West Memphis Auto Sales to fill in the contract. The Hudgens left their Dodge car and went away in the Ford. Later, the Hudgens learned that the blank contract had been dated May 22, 1959, and filled in as follows:

| | |
|---|---|
| Price of the Ford Car | $1,395.00 |
| Less Value of the Dodge Car | 245.00 |
| | |
| Unpaid Balance of Cash Price | 1,150.00 |
| Cost of Insurance | 142.90 |
| Interest Charge | 133.42 |
| | |
| Total Due | $1,426.32 |

The last mentioned amount was payable in twenty-four monthly installments of $59.43 each.

The price of the Ford car was increased on the contract from the agreed price of $1,095.00 to $1,395.00; so instead of owing a balance of $850.00, as the Hudgens testified, the contract showed they owed a balance of $1,150.00; and the amount of interest that they were to pay was $133.42. That interest figure speaks volumes! The evidence thus unquestionably shows that West Memphis Auto Sales intended that the Hudgens were to pay the definite sum of $133.42 as interest, and this is conceded by the Majority Opinion to be usury on an $850.00 obligation. The intention to collect a definite sum of money, which is in excess of 10%, is usury. *Commercial Credit Plan* v. *Chandler*, 218 Ark. 966, 239 S. W. 2d 1009. So I submit with all the power at my command that when it was shown that the original balance due was

$850.00 and the interest to be collected on that amount was $133.42, then usury was clearly established in the interest charge. The Lower Court found there was usury and should not be reversed on that issue.

The Majority Opinion on rehearing contains this paragraph, which is a correct statement of the law:

"Where a lender induces the borrower to sign a note in blank and later fills in the principal in a sum greater than the amount actually lent it has been held (correctly, we think) that these facts support a finding of usury. *Cortner* v. *Bennett,* 230 Miss. 369, 92 So. 2d 559; *Autocredit of Fort Worth* v. *Pritchett,* Tex. Civ. App., 223 S. W. 2d 951; contra, *Chambers* v. *Gilbert,* 68 Minn. 183, 70 N. W. 1077."

After recognizing the above quotation as a correct rule of law, the Majority Opinion seeks to differentiate the present case from the quoted rule on the theory that the West Memphis Auto Sales transferred this contract to the Universal C. I. T. and that it was the Universal C. I. T. that exercised the "forbearance" and did not receive the extra $300.00 for doing so. The transaction and the determination of the amount of interest to be charged is not to be determined after a transfer, but is to be tested by what West Memphis Auto Sales intended *at the time. General Contract Corp.* v. *Duke,* 223 Ark. 938, 270 S. W. 2d 918. The West Memphis Auto Sales filled out this contract and transferred it to the Universal C. I. T. and received a check for $943.00 and also a potential subsequent recovery called a "reserve" of $207.00, which would be $1,150.00 as the total amount that the West Memphis Auto Sales was to receive. This was $300.00 more than the West Memphis Auto Sales should have received, and that $300.00 is usury in itself.

The Majority Opinion on Rehearing says:

"It will be seen that the fundamental characteristic of usury is the exaction of an excessive charge for the loan or forbearance of money. In the case at bar if the dealer had intended to keep the contract himself and had inserted an increased principal amount as a device for

obtaining a higher return as compensation for his extension of credit, then a finding of usury might well be justified.''

In effect, that is what the West Memphis Auto Sales did. It raised the price of the car $300.00 and was to get $300.00 extra for the credit transaction, and that $300.00 was usurious. In *Foster* v. *Universal C. I. T. Corporation*, 231 Ark. 230, 330 S. W. 2d 288, we said:

''The appellant shows that the contract at its inception had in it the seeds of usury, because it allowed the appellee under the circumstances that came into existence in this case to retain some of the appellant's money without promptly crediting such amounts on the maturing payments due on the contract.''

The same reasoning applies here. This contract had the seeds of usury sown in it because it allowed the West Memphis Auto Sales to get more than 10% for the forbearance of the real debt of $850.00. Merely because the West Memphis Auto Sales later sold the paper to the Universal C. I. T. doesn't alter the fact that the West Memphis Auto Sales deliberately set about to have the Hudgens pay more interest than they should have paid; so the transaction was usurious in its inception, and the Chancery Court should be affirmed in its holding to that effect.

We are certainly opening the door to ruin all of our usury holdings by letting fraud by the seller be a defense against usury. That is letting one wrong be a defense against another wrong. The effect of the present holding will be that a seller may persuade a trusting buyer to sign the blank contract, and may thereafter raise the price and transfer the contract to a finance company and thereby both the seller and the finance company will avoid the extreme penalties of usury. As I see it, the vice in the Majority holding is the failure to recognize— as did the Chancellor—that usury was present in the original transaction.

Sam Robinson, Associate Justice, dissenting. Article 19, Sec. 13 of the Constitution of Arkansas pro-

vides: "All contracts for a greater rate of interest than ten per cent per annum shall be void, as to principal and interest, and the General Assembly shall prohibit the same by law; but when no rate of interest is agreed upon, the rate shall be six per centum per annum."

Notwithstanding the Constitution and the statutes implementing it, over a period of many years the practice of charging a usurious rate of interest had grown to the extent that in many instances interest was charged at a rate of more than 40 per cent per annum. In *Hare* v. *General Contract Purchase Corp.*, 220 Ark. 601, 249 S. W. 2d 973, this Court gave a caveat to the effect that subsequent to the effective date of that decision the constitutional provision prohibiting usury would be enforced. Later, in several cases this Court made it clear that usury would not be tolerated. *Sloan* v. *Sears Roebuck Co.*, 228 Ark. 464, and cases cited therein.

In the case at bar the effect of those decisions is swept away. Henceforth, in my opinion, the practice of charging a usurious rate of interest will occur more frequently than it did before the Hare case. Now the penalty for charging usury can be avoided by merely charging more than the agreed price and basing the interest on the fraudulent charge. Then, if the seller gets caught making the usurious charge, he will not have to suffer the penalty the law provides for usury.

Here it was found by the trial Court and by this Court that the purchaser bought an automobile for the agreed price of $1,095.00; that he paid $245.00 at the time of the purchase, leaving a balance of $850.00, payable in 24 equal monthly installments. Interest at the rate of ten per cent per annum would amount to approximately $95.00, but as shown on the face of the contract, the purchaser was charged $133.40 as interest, approximately 15 per cent per annum. But the majority in effect holds that no usurious rate of interest was charged because in addition to charging the unlawful rate of interest, an attempt was made to defraud the purchaser of an additional $300.00.

I respectfully dissent.

PAUL WARD, Associate Justice, concurring. I am concurring merely because I think the majority opinion went further than it was necessary to go in order to show there was no usury, and that consequently the opinion may possibly open the door to add to the present state of confusion relative to usury. I refer to the sentence which reads: "It was the finance company that exercised the forbearance, but it did not receive an extra $300 for doing so".

Our former opinions have made at least one thing clear about usury—that is, if a note is usurious in its conception it cannot be purged of usury by transfer to an innocent purchaser. So, it occurs to me that the opinion went far enough by citing the *Ford* v. *Hancock* case and then pointing out that the addition of $300 was merely a fraud and had none of the indicia of a charge for the forbearance of the use of money.